(38 South. 526.)

No. 15,408.

EICHORN v. NEW ORLEANS & C. R., LIGHT & POWER CO. et al.*

(Dec. 19, 1904. On Rehearing, April 10, 1905.)

APPEAL BOND—USE OF ABBREVIATIONS—CORPORATION AS SURETY—WRONGFUL DEATH —ACTION BY MINOR CHILDREN.

1. The use of abbreviations in judicial documents is dangerous, and to be avoided. In this particular instance it was not prejudicial, as their meaning was shown by identification with different parts of the record.

---

*Rehearing on motion to dismiss denied January 16, 1905.

2. The objections to the qualifications of the company, which signed the appeal bond of the plaintiff are met and answered by the statutes on the subject of such companies and the certificate of the Secretary of State.

3. The authority of the parties who signed the appeal bond for the surety company is shown to the satisfaction of the court. The company has not only not questioned their authority, but has received a premium for becoming such surety.

### On the Merits.

4. The right of the minor children of a person who has been killed by the fault of another to an action against the party committing the fault for damages is a statutory right, and the extent of the relief to be given them is controlled by the evident intent of the statute. The fact that the beneficiaries under the statute are not "all" the children, but only those who are "minors," indicates clearly that the object was to save the latter harmless during minority from loss of the benefits (material and moral) which they would have received from the father up to the time of their respective majorities had he lived to tide them over during that period under as favorable conditions as would have existed had he not been killed. The amount of property which the father might have possibly earned up to the date of his probable natural death, and which the children might have inherited at that time, does not enter as a factor in determining to what extent they are entitled to a judgment. The amount decreed to the minors should be apportioned among them according to the length of their respective minorities. One of the minors, who, after bringing suit, became of age before judgment, is not cut off from the benefit of the statute during her minority.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Walter Byers Sommerville, Judge.

Action by Amelia Eichorn against the New Orleans & Carrollton Railroad, Light & Power Company and the New Orleans Railways Company. Judgment for plaintiff, and defendants appeal. Modified.

Dart & Kernan, for appellants. George Joseph Untereiner and Benjamin Rice Forman, for appellee.

### Statement of the Case.

NICHOLLS, J. Plaintiff and appellee has moved to dismiss the appeal taken in this case on the following grounds:

(1) Because the New Orleans & Carrollton Railroad, Light & Power Company has given no obligation or bond (as a condition precedent to its right to appeal) as required by law. Code Prac. art. 575; Act No. 45 of 1890, p. 38.

(2) Because the National Surety Company, named as surety on the appeal bond of the New Orleans Railways Company, does not possess the qualification required by law to become a surety on an appeal bond in the parish of Orleans, state of Louisiana.

(3) It is not domiciled or legally represented in the parish of Orleans.

(4) It is not authorized to do business in the state of Louisiana.

(5) It does not reside nor have its domicile in New Orleans, state of Louisiana.

(6) It is not worth in property, situated in the state of Louisiana, $32,000 over all its debts and liabilities.

(7) The persons who purport to have signed the appeal bond in this case for the National Surety Company were not, at the time they signed the bond, legally authorized by the said company to sign, execute, and deliver the appeal bond in this case, and were not authorized to bind said National Surety Company. After the district court had granted an order of appeal, and an appeal bond had been filed, the plaintiff obtained from that court a rule upon the New Orleans & Carrollton Railroad, Light & Power Company and upon the New Orleans Railways Company to show cause why the appeal taken should not be dismissed on the ground (as against the first-named company) that it had given no bond or obligation as required by law (Code Prac. art. 575; Act No. 45 of 1890, p. 38), and (as against both companies) that the National Surety Company, named as surety, did not possess the qualifications required by law to become a surety on an appeal bond in the parish of Orleans for the same reasons which were set up as objections in the motion to dismiss which

were filed in the Supreme Court. This rule bore the title:

"Mrs. Amelia Eichorn vs. New Orleans & Carrollton Railroad, Light & Power Co. & New Orleans Railways Co.
"No. 69,615. Division D. Civil District Court."

· The rule was, on the 27th of June, 1904, discharged after a hearing. Plaintiff therein obtained an order for a suspensive or devolutive appeal from the said judgment of dismissal on furnishing a bond of $100. She executed a bond reciting as the occasion for executing the same that the principal in the bond had that day filed a petition of appeal from a final judgment rendered against her in the suit of Mrs. Amelia Eichorn, Tutrix, v. New Orleans & Carrollton Railroad, Light & Power Company and New Orleans Railways Company, No. 69,615 of the civil district court for the parish of Orleans, on the 19th day of September, 1904, and signed on the 30th day of October, 1904.

The transcript in the matter of that appeal was filed in the Supreme Court on November 7, 1904, and on application of plaintiff's counsel was docketed under the number 15,408, and fixed for submission on briefs at the same time as the motion to dismiss made in the Supreme Court.

## Opinion.

In plaintiff's brief counsel say:

The "New Orleans and Carrollton Railroad, Light & Power Company is nowhere named as the principal obligor, or one of the principal obligors, on the face of the bond. The obligor named is the New Orleans' & Carrollton Railroad, Light & Power Company. There is no such defendant. 'Rd.' might stand for any one of the 10,000 words beginning with 'R'; and so of the letter 'P.' It is true that it is settled jurisprudence that the appellant condemned need not sign the appeal bond, but he must be named in the motion and order of appeal and in the body of the bond as a principal. See Percy v. Millaudon, 6 La. 584.

"As to the New Orleans & Carrollton Railroad, Light & Power Company, it is clear the appeal should be dismissed, because it is not named either in the motion of appeal, nor in the title, nor anywhere in the bond, either as a principal, or in the title of the suit as written in the body of the bond. See Cook on Corporations, § 151. In taking an appeal the appellant becomes an actor or plaintiff in error, and must proceed in the corporate name in the petition or motion of appeal, and in the appeal bond must be named as principal and named as one who appeals."

The order of appeal to which reference is made was granted in suit No. 69,615 of the civil district court on a motion made therein by Dart & Kernan, "Attorneys for Defendants," on behalf of their clients. The motion refers to the judgment appealed from as that rendered in that case on June 7, 1904, and the appeal is granted to the movers. The title to the suit in the motion was "Mrs. Amelia Eichorn, Tutrix, vs. N. O. & C. R. L. P. Co. New Orleans Railways Co. No. 69,615."

Plaintiff, in support of her several positions, refers the court to Rev. St. § 685; Blackstone, 474, 475; Thompson on Corporations, § 284; Smith v. Plank Road Co., 30 Ala. 664; Act No. 67 of 1876, p. 109; Act No. 41 of 1894, p. 45; Civ. Code, art. 2997; Seymour v. Cooley, 9 La. 78; Rowland v. Pascal's Ex'r, 10 La. 598; Fuselier v. Robin, 4 La. Ann. 61; Kling v. Sejour, Id. 133; Sloan v. Menard, 5 La. Ann. 218; Dickson & Co. v. Morgan, 6 La. Ann. 562; Girard v. Hirsch, Id. 651; Wilson v. Vincent, 12 Rob. 235; Code Prac. art. 575.

Appellant refers the court to section 1 and section 6 of Act No. 41, of 1894, pp. 45, 47, to Act No. 105 of 1898, p. 142; Mechem on Agency, § 196; to Oil Company v. Matheson, 48 La. Ann. 1321, 20 South. 713; Holmes v. Railroad Co., 49 La. Ann. 1465, 22 South. 403; Moffett v. Kock, 106 La. 372, 31 South. 40.

The objections urged by plaintiff to the use of abbreviations in giving the name of the New Orleans & Carrollton Railroad, Light & Power Company might, had they been made under different circumstances, have given that company very considerable trouble; but they have no force as presently

advanced. There is no question as to the fact that that company was one of the defendants. Plaintiff herself had made it such in the suit No. 69,615 of the civil district court in connection with the New Orleans Railways Company, and obtained a judgment in solido against them both. In the various pleadings in that case the number of that suit on the docket is constantly repeated and referred to, and identifying them with it. The appeal was taken by the attorneys of the appellants "for the defendants," and who "the defendants" were is fixed by the record. In the appeal bond which the plaintiff executed in the matter of her appeal from the judgment of the district court refusing to dismiss defendants' appeal she herself, referring to the New Orleans & Carrollton Railroad, Light & Power Company, made use of the same abbreviations which she complains should have been used in other parts of the record in describing that company.

The identity of the company which is referred to as the New Orleans and Carrollton Rd., L. & P. Co. with the New Orleans & Carrollton Railroad, Light & Power Company cannot be seriously questioned. The objection that the National Surety Company did not possess the qualifications necessary under the law to become a surety on the bond were met and answered, as appellees' counsel admit, by the certificate of the Secretary of State, and the decision of this court in Moffett v. Kock, 106 La. 372, 31 South. 40, and the other decisions which were referred to in that case. The evidence establishes that not only that that company, with knowledge of the bond, which was referred to in that case, did not repudiate the authority of the parties who acted in its behalf, but that it had received the premium owing to it by reason of being the surety on that bond. As the bond could unquestionably be enforced against it, appellee has no ground of complaint.

The motion to dismiss made in this court is denied, and the judgment of the district court also, refusing to dismiss the appeal from which the plaintiff has appealed, is affirmed.

## On Rehearing.

This action is brought by the plaintiff, as tutrix of the minor children, issue of her marriage with Ludwig Eichorn, who, on the 29th of January, 1902, was crushed between two cars of the New Orleans & Carrollton Railroad, Light & Power Company, and died two days afterwards. The plaintiff brought suit in her individual right as widow of the deceased, claiming $50,000 against the company named as damages for his death. A verdict in her favor was found by the jury which tried the case for $25,000, and for this amount judgment was rendered. On appeal the judgment was reduced to $10,000. 112 La. 236, 36 South. 335. On rehearing we were informed by defendant's counsel that after the verdict in the case had been returned a suit had been brought (the present suit) by the plaintiff as tutrix of her minor children claiming damages in the latter's favor for $50,000 for their father's death. It was urged that the judgment which we had rendered was excessive unless it should be construed as covering also the damages sustained by the minors. The rehearing asked for was refused, but in the opinion given on the application it was stated that when the widow sued alone a judgment in her favor exhausted the cause of action for the damages which the deceased could have recovered had he survived his injuries, leaving to the minors only a right of action to recover the pecuniary loss sustained by them by reason of the father's death.

In the petition in the present suit $5,000 of the $50,000 claimed are claimed for the sufferings of the deceased occasioned by the injury and $45,000 for the loss of his comfort, society, and support to his helpless mi-

nor children. It is averred in the petition that Eichorn at the time of his injury was in good health; that he had a life expectancy of 40 years; and that his earnings were about $3,000 a year.

On the trial in the district court it was announced by the defendant's counsel that he considered that all questions of responsibility for the accident had been determined against the defendant by the decision of the Supreme Court in the first suit, and that he did not intend to offer any evidence on the question of the responsibility for the accident vel non; that that fact was not disputed in this case. The jury, by a vote of 10 to 2, returned a verdict for $20,000 in favor of the plaintiff, and defendant appealed.

In plaintiff's brief it is said:

"Eichorn at the time of his death was 39 years old. His life expectancy was 28.9 years. He was earning by his skill, labor and industry $3,000 a year. If he had lived that long, and continued to earn that much, his earnings would have amounted to $86,700. His business was contractor and manufacturer of cornice and galvanized iron work. It is probable, with his industry and energy and application to business, that his income would increase. He left seven minor children—Lucille, 19 years of age, Amelia, 18, Wilhelmina, 16, Louis, 15, August, 13, Irene, 8, Gustave, 7—four girls and three boys."

"Girls, in this community, are always supported by their father until they marry a man able to support them. Boys are supported until they have become of age, or acquire a trade or occupation by which they can earn a living. It is clear that a boy twenty years old, with lucrative employment, would not suffer as great a pecuniary loss by the death of his father as an infant of tender years. In this case the oldest boy was fifteen years old; the next thirteen; the youngest, seven. It would take $60,-000, invested at 5 per cent., to yield an income of $3,000 a year."

"If we estimate the pecuniary value of a man's life to his family, we must take his earnings and his age or his life expectancy as the basis of the calculation."

Counsel has selected a number of the judgments rendered in this court in personal injury cases, and applied the rule which he advances as the test, and compared them with what would be the result of the application of the same rule in the present case.

He criticises the moderation or conservatism of courts which render small judgments, declaring that they tend to cause corporations and employers to relax their care and vigilance for the safety of human life and the protection from bodily injury, and he presents tables going to establish that where large verdicts are returned there are much fewer cases of injuries and death than where they are small. He urges that life expectancy tables should be used by the courts as factors in determining the pecuniary value of a man's life to his children; referring the court to Lincoln v. Power, 151 U. S. 441, 14 Sup. Ct. 387, 38 L. Ed. 224, Ritter v. Mutual Life Ins. Co., 169 U. S. 152, 18 Sup. Ct. 300, 42 L. Ed. 693, and Vicksburg R. R. v. Putnam, 118 U. S. 554, 7 Sup. Ct. 1, 30 L. Ed. 257.

The defendant's counsel, in their brief, say:

"Plaintiff makes a strenuous argument to establish as a basis for the fixing of the damages suffered by the children the theory that a large sum ought to be allowed them—a sum which at interest would be equivalent to the earning capacity of the man at the time of his death—this allowance to extend over his probable period of life as shown by life expectancy tables, allowing nothing for accident, bad health, or death. It is not reasonable to adopt any such basis as a rule for computing damages. That rule has been commented upon in many cases, but it has been usual, in using these tables before a jury, to direct them to consider all the contingencies to which life is liable, and in no case has it ever been held that the table should be accepted absolutely, and an annuity paid out on capitalization. See, among the cases, Railroad v. Putnam, 118 U. S. 554, 7 Sup. Ct. 1, 30 L. Ed. 257; St. Louis Railway Co. v. Needham, 52 Fed. 376, 3 C. C. A. 129; Cheatham v. Red River Line (D. C.) 56 Fed. 250; McGary v. City, 4 La. Ann. 440; Downing v. Railroad Co., 104 La. 523, 29 South. 207.

"In the case at bar the life tables were used before the jury, and no instructions were given by the judge to regulate their consideration, or to influence the jury away from the argument which was so strenuously built upon those tables."

Referring to the cases cited by the plaintiff, defendant says:

"Inasmuch as this court decided in the Rice Case, 51 La. Ann. 114, 24 South. 791, and it seems to be the accepted jurisprudence in this

state, that the allowance for damages will be determined in each case without being controlled by allowances in other cases, having regard, however, for uniformity as far as possible, it would seem proper to make comparisons between previous allowances by this court made to widows and children when presented in one suit. It must be fair to consider what had been allowed in previous cases, and the division of the matter into two suits ought not to affect the total amount which should be allowed. Any other methods put a premium on litigation, and would, at counsel's whim, permit a separate suit for each beneficiary."

The deceased owned at his death real estate part of which was used for residence purposes and part as a manufacturing establishment known as the Louisiana Cornice Works. He owned the establishment and carried it on individually. He had general control and management of it, taking and carrying out contracts. The business continued after his death, the widow taking charge in place of her husband. It seems to have been successfully carried on by her, though she testified that she could not conduct it as well as her husband had done.

During the husband's life he maintained his family through that business, but he did not accumulate money, as he lived liberally.

The widow valued the real estate which he left and which was still owned by the family at at least $10,000. He left a life policy for $2,000, which she collected. The extent of her husband's earnings rests upon her own testimony, which is of a very indefinite character. She estimates that he earned about $3,000 net in a year, but the parties kept practically no books, and she produced no vouchers. During her husband's lifetime the children, when young, were sent to a German pay school, but as they became older they went to the public school. None of them had graduated. None had employment other than the oldest son, who was learning the business of the establishment by service in it. None of the children were married. The oldest child had become of age since this suit was brought and before judgment. The deceased is shown to have been a very active, industrious, business man, of good habits, and in good health; an affectionate father and husband. The testimony in the present case is substantially the same as that brought by the widow in her individual right. In the latter case tables of mortality were introduced, and under those tables we found his expectancy of life to be about 28 years. The view of this court in respect to those tables were announced in the case of Hebert v. Lake Charles Ice, Light & Water Works Co., 111 La. 533, 35 South. 731, 64 L. R. A. 101, 100 Am. St. Rep. 505, where, referring to the difficulty of fixing the quantum of damages in a case of that character (which was similar to the one we are now considering), we said:

"The elements which go to fix the quantum of damages are difficult of ascertainment, but it is none the less the duty of the court to fix the amount as best it may in the exercise of a sound discretion. The mortality tables are simply an assistance to the court by way of estimate or approximation. They have no absolute probative force. They may properly be referred to by insurance companies in making their contracts, but judgments of courts cannot be based absolutely upon them. The earning power of the deceased would have had to be exercised throughout a long number of years and under numberless contingencies."

In Lindsey v. Tioga Lumber Company, 108 La. 476, 32 South. 468, 92 Am. St. Rep. 384, we said:

"When we come to estimate damages upon what would have been his length of life, we deal largely in conjecture, for there are many matters as to which no testimony can be adduced. For instance, we can form no idea as to the occupations in which he might have to be engaged, the climate of the places in which he might be called on to reside, his special habits and character as they would be developed later."

Courts cannot deal with those tables to the extent that corporations whose business it is to enter into aleatory contracts are authorized to do. The practical question before us is, what course is it our duty to pursue in view of the former judgment in reference to the entire amount of damages which should be adjudged, bearing in mind

the obligations and duties of the mother and the rights and obligations of the children? It is unquestionably true that in determining the question of damages in that case we were greatly influenced by a consideration of the increased obligations and duties and responsibilities thrown upon the mother in respect to the children which arose from the death of the father, and by the aid and assistance which she would receive through the damages decreed in the judgment in meeting and carrying out those obligations, duties, and responsibilities. Though the benefit to be derived by the children themselves from the judgment was not mentioned, it played a most important part in reaching our conclusions. We cannot well ignore that fact, though the suit of the widow and that which she now brings on behalf of her children are distinct suits. We assume that the judgment heretofore rendered by us has been executed, and that the money received therefrom has been and is being used for the benefit of the children as well as the mother. The claim urged by plaintiff's counsel is not maintainable that because Eichorn, who owned property valued from seven to ten thousand dollars, was able, by bringing tact, industry, skill, and popularity to bear in the administration of that property, to earn $3,000 a year, which he expended annually for the benefit of his wife and his minor children, the latter are therefore entitled to have decreed to them in full and absolute ownership (when the husband and father is killed by the fault and negligence of the defendant company) an amount of money which, if placed at interest, would produce annually the sum of $3,000, notwithstanding the fact that the property which the father owned at the time of his death remains in the joint ownership of the wife and children, and is administered by the widow almost as advantageously as it would have been had the husband lived. The right of action given to the children which is exercised in this case

is a statutory right, and the extent of the relief to be given to them is to be controlled by the evident intent of the statute. The fact that the beneficiaries under the statute are the "minor" children, and not "all" the children, of the deceased (the children who were majors at the time of the father's death or who became so before the bringing of suit taking nothing under its provisions, as was held in Huberwald v. Orleans Street R. R. Co., 50 La. Ann. 479, 23 South. 474), indicates clearly that the object of this law (so far as the children are concerned) was to save them harmless during their minority from the loss of the benefits (material and moral) which they would have received had their father lived up to the time of their respective majorities to provide for their temporary needs—to tide them over to majority under as favorable conditions as they would have been tided over had their father not been killed. We do not think that the amount of property which the father might have possibly earned up to the date of his probable natural death, and which these children might have inherited at that time, enters as a factor in determining to what extent they are entitled to a judgment in their favor. The true question is, what had the children the right to receive from their father during their minority? For the loss of this they are to be compensated. What they were to get after his death would not enter into the case.

Were it otherwise, the record is not such as would warrant us in concluding that Eichorn would have increased his patrimony had he lived. It has been held (Sutherland on Damages, c. 37) in Alabama that, if the only evidence relied upon to furnish data for ascertaining the damages is the statement by the widow of the deceased that at the time of his death they were saving $35 a month, there was not a sufficient basis to support a verdict for damages. Louisville & Nashville Railroad Co. v. Pearson, 97 Ala.

211, 12 South. 176. And in Pennsylvania it was held that, if the deceased had not accumulated anything, an expectation of inheritance by his children could not be considered. Wiest v. City of Philadelphia et al. (Pa.) 49 Atl. 891, 58 L. R. A. 666. We think that under the terms of our statute the rights of the widow are not as limited as are those of the children. When the jury in this case returned in favor of the children against the defendant a verdict for a larger amount than that which this court decreed it to be liable for to the widow, we think the jury erred.

We are now to determine what, under the circumstances of this case, the judgment of this court should be. The situation shown is this: Eichorn owned property valued at his death at from seven to ten thousand dollars. He was earning at the utmost $3,000 a year, which amount he expended on his family. The property remains in kind. Presumedly, it belonged to the community. At his death the widow became the usufructuary, and it has been and is still being held and utilized as such nearly, if not fully, as well by the widow as by her husband. During his lifetime he was bound to support the children. After his death that obligation to the extent of her pecuniary liability devolved upon the mother, both as such and as usufructuary. The children have been wounded in their affections by their father's death. They have been during their minority deprived of the benefit of the father's training and advice and of the pleasure and comfort of his society.

Our attention has been called by defendant's counsel to two facts: First, that the eldest child, Lucille, reached her majority after the suit was brought, though before judgment; second, that, though no appearance was made on behalf of the New Orleans Railways Company, and no default was taken against it, judgment was rendered against it for $20,000.

We do not think the minor Lucille should be cut off from the benefit of the statute during her minority. The judgment against the New Orleans Railways Company will necessarily, for the reasons assigned, have to be reversed. We have given this case great consideration, and in the exercise of our best judgment are of the opinion that the judgment appealed from should be amended, and reduced to $7,000. The suggestion made by plaintiff's counsel that the judiciary should, under a general policy, render large judgments in cases like the present one with the view of enforcing proper care and diligence on the part of employers and railroad corporations, is one obviously without force. We have to act in each case upon its own special state of facts. If any particular one calls legally for the infliction of exemplary damages, we can impose them. General preventive or corrective remedies needed to bring about the results referred to, rest with the legislative department.

For the reasons herein assigned, the judgment appealed from as against the New Orleans Railways Company is annulled, avoided, and reversed at plaintiff's costs in both courts.

It is further ordered, adjudged, and decreed that the judgment as against the other defendant is hereby amended and reduced to $7,000, and that said amount is decreed to be apportioned among the minors mentioned in plaintiff's petition according to the length of their respective minorities, and, as so amended, judgment is affirmed. Appellee to pay costs of appeal.