TEXAS & NEW ORLEANS RAILROAD COMPANY ET AL. V. FANNIE
MILLER ET AL.

Decided May 4, 1910.

**1.—Death by Negligence—Transitory Action.**

A statute creating a cause of action for damages sustained by the relatives or next of kin of one whose death was caused by the negligence of another, is not penal, and the cause of action is transitory and may therefore

be enforced in any State or country whose public policy is not opposed to the recognition and enforcement thereof.

### 2.—Same—Injury in other State—Procedure.

When the courts of this State take jurisdiction of a cause of action by the next of kin for personal injuries resulting in death, where the injuries were inflicted in another State the statute of the State creating the right of action and not our statute will be looked to and enforced as a matter of comity due by one State to another.

### 3.—Same.

The courts of one State will take jurisdiction of an action by the next of kin for damages for personal injuries resulting in death although the injuries were inflicted and the death occurred in another State, provided there exist in both States statutes of substantially the same import and character giving a cause of action for such injuries.

### 4.—Same.

The laws of Louisiana and Texas giving to survivors a right of action in cases of personal injuries resulting in death, compared and held not so essentially different as would warrant either State in withholding that comity due from one State to another, and therefore the widow and children of a railroad engineer who was wrongfully injured and killed in Louisiana while in the discharge of his duties, could maintain an action therefor in this State.

### 5.—Power of Legislature—Common Carriers—Exemption from Liability.

The fact that an Act of the Legislature of the State of Louisiana incorporating a railroad company contained a provision exempting it from liability for personal injuries resulting in death, offers no barrier to the courts of this State entertaining jurisdiction of such an action. The validity of such an exemption questioned.

### 6.—Comity—Remedy—Power of Courts to Apply.

The fellow servant doctrine affects the remedy rather than the substantive right, and the fact that it is in force in personal injury cases arising under the laws of a sister State, affords no reason why the courts of this State should not take jurisdiction of such cases and apply the doctrine.

### 7.—Pleading—Petition and Answer Construed Together.

The omission of a necessary averment in plaintiff's petition may be supplied by the averments of defendant's answer. This rule applied in an action for damages for personal injuries resulting in death inflicted in another State, wherein the petition failed to allege that the laws of such State gave a right of action to any one in such case, but the answer of the defendant supplied the omission by pleading the law upon which plaintiff's case was grounded.

### 8.—Railroad Charter—Constitutional Rights.

A provision in a railroad charter exempting the company from liability for injuries resulting in death to its train operatives, is not such a contract between the State and the company as would fall within the purview of article x, section 1, of the Constitution of the United States, inhibiting the impairment of the obligation of contracts. Hence a subsequent Act of the Legislature making the company liable for such injuries would not be unconstitutional.

### 9.—Railroads—Joint Operation—Personal Injuries—Joint Liability.

Evidence reviewed as to the joint operation of their respective roads and the conduct of their business by two railroad companies and held sufficient to make them jointly and severally liable for injuries inflicted by either upon an employe of both while engaged in their common service, whether they were partners or not.

### 10.—Same—Cattle on Right of Way—Negligence.

Evidence as to negligence on the part of a railroad company in permit-

ting cattle to pass through an open gate onto its right of way, whereby a locomotive was derailed and an engineer killed, held sufficient to support a judgment against the company.

Appeal from the District Court of Harris County. Tried below before Hon. Chas. E. Ashe.

*Baker, Botts, Parker & Garwood* and *A. L. Jackson,* for appellants. —A suit or action instituted in the courts of Texas on a cause of action growing out of injury in the State of Louisiana, resulting in death, must be tried, if at all, according to the laws of the State of Louisiana; and when the laws of said State applicable thereto, either as to the right or remedy or defense, are essentially different from those of this State, the courts of Texas will not entertain jurisdiction of such suit or action. Willis v. Missouri Pac. Ry. Co., 61 Texas, 432; Texas & P. Ry. Co. v. Richards, 68 Texas, 375; St. Louis, I. M. & S. Ry. Co. v. McCormick, 71 Texas, 660; De Harn v. Mexican Natl. Ry. Co., 22 S. W., 249; De Harn v. Mexican Natl. R. Co., 86 Texas, 71; Mexican Natl. R. Co. v. Jackson, 89 Texas, 107; Slater v. Mexican Natl. R. Co., 194 U. S., 120.

The plaintiff's petition showing on its face that the deceased, William T. Miller, died from injuries inflicted upon him entirely within the State of Louisiana and beyond the limits of the State of Texas, and there being no allegation in the petition as to the laws of Louisiana on the subject matter of this litigation, the Texas courts could not take judicial notice of the statutory right of action in Louisiana so as to cure the petition and afford plaintiffs relief on the theory and assumption that there was a right of action in the plaintiffs for such injuries inflicted in that State; and the petition was subject to general demurrer. De Harn v. Mexican Natl. R. Co., 22 S. W., 249; De Harn v. Mexican Natl. Ry. Co., 86 Texas, 71; Mexican Cent. R. Co. v. Mitten, 13 Texas Civ. App., 653; Mexican Cent. R. Co. v. Goodman, 20 Texas Civ. App., 109; McDonald v. Mallory, 77 N. Y., 548; Leonard v. Columbia Steam Nav. Co., 84 N. Y., 50; Hyde v. Wabash, St. L. & P. Ry. Co., 61 Iowa, 441; Davis v. New York & N. E. R. Co., 143 Mass., 301; Wooden v. Western N. Y. & P. R. Co., 126 N. Y., 10; State v. Clay, 100 Mo., 571; Union Pac. R. Co. v. Wyler, 158 U. S., 285.

The State of Louisiana having by legislative Act of 1878 created and incorporated the Louisiana Western Railroad Company, vested in it by section 17 of that Act a valid contract right of immunity and exemption from liability for injuries resulting in the death of its train operatives, such as Miller and Gross, the amended statute of 1884 of the State of Louisiana, creating actions in favor of certain relatives for injuries resulting in death, in so far as it might be intended to apply to the defendant in this case, would impair the obligation of a contract, and thus violate the Constitution of the United States and of the State of Louisiana and of the State of Texas, and hence evidence of such statutory right of action brought about by said amendment, and the decisions construing the same, would be inadmissible. Pecot v. Police Jury, 41 La. Ann., 707; Louisiana West-

ern R. Co. v. Louisiana Cent. Imp. Co., 119 La., 927; Heirs of Gossin v. Williams, 36 La. Ann., 187; St. Julien v. Morgan's Louisiana & T. R. & S. S. Co., 39 La., 1063.

According to the laws of the State of Texas, the failure of the company to keep the gates closed at this crossing, having first provided proper fastenings for the use of third parties, constituted no actionable negligence on its part. Texas & P. R. Co. v. Glenn, 8 Texas Civ. App., 303; San Antonio & A. P. R. Co. v. Robinson, 17 Texas Civ. App., 401; St. Louis S. W. R. Co. v. Adams, 24 Texas Civ. App., 236.

The evidence showing without dispute that the derailment was caused by the animal on the track which had entered through the gate left open by third parties, and that deceased, Miller, was familiar with the surroundings, and knew from experience that animals would frequently enter upon the enclosed right of way and track notwithstanding the fences and gate fastenings, he assumed the risk of the derailment and injury as incident to the service, and the defendants would not be liable therefor. Quill v. Houston & T. C. R. Co., 46 S. W., 847; Quill v. Houston & T. C. R. Co., 93 Texas, 616; Missouri Pac. Ry. Co. v. Somers, 71 Texas, 702; Green v. Cross, 79 Texas, 131.

The deceased, Miller, having voluntarily entered and remained in the service of each of the defendants, the Texas & New Orleans Railroad Company and the Louisiana Western Railroad Company, with the understanding that he was to serve alternately for the one and for the other on their respective lines of railroad, receiving his pay from each of them in turn for the particular service rendered for them respectively, and acting under the immediate direction, supervision and control of that company for which during the given time he was working, the defendant Texas & New Orleans Railroad Company did not owe him any of the substantive duties ordinarily resting on the master toward the servant for the latter's safety in connection with the service rendered by him for the Louisiana Western Railroad Company on the latter's road and while beyond the line of the Texas & New Orleans Railroad Company, and beyond the scope of its immediate direction, service and control. Texas & N. O. R. Co. v. Skinner, 4 Texas Civ. App., 661; Ellsworth v. Metheney, 104 Fed., 119; Mitchell Transfer Co. v. Ehmet, 55 L. R. A., 710; Brown v. Byroads, 47 Ind., 435.

The section foreman, train operatives and other employes of the Louisiana Western Railroad Company, whose negligence is complained of as the proximate cause of the injury and death, not being at the time engaged in the performance of any service for the Texas & New Orleans Railroad Company, or under its immediate direction, the latter company would not be liable for the results of such negligence on the principle of *respondeat superior.* Cunningham v. International Railway Co., 51 Texas, 503; 20 Am. & Eng. Ency. Law (2d ed.), 178, 181; Byrne v. Kansas City, F. S. & N. R. Co., 61 Fed., 605; Powell v. Virginia Const. Co., 88 Tenn., 692; Hardy v. Shedden Co., 37 L. R. A., 42.

*S. H. Brashear, John Lovejoy* and *John W. Parker,* for appellees.

NEILL, Associate Justice.—The statement of the nature and result of the suit as made by appellants' brief is acquiesced in by the appellees, and is adopted by us. It is as follows:

"The appellee, Fannie L. Miller, surviving wife of William T. Miller, deceased, suing for herself and for the use and benefit of the minors, G. W. Miller, William D. Miller and Dorace H. Miller, brought this action in the District Court of Harris County, Texas, for the death of her husband, William T. Miller, June 1, 1905, while he was operating a locomotive engine drawing a passenger train near the station known as Sulphur on the line of the Louisiana Western Railroad, in the State of Louisiana, by reason of the derailment of said train.

"The first amended original petition, filed May 25, 1908, alleged substantially that the defendant Texas & New Orleans Railroad Company owned and operated a line of railroad from Houston, in Harris County, Texas, to the town of Echo in the State of Texas; and that the defendant Louisiana Western Railway Company operated a line of railroad from Lafayette, in Louisiana, to said town of Echo; and that, on and prior to the date of the injury complained of, the deceased, William T. Miller, as a locomotive engineer, was in the employment of both the defendants, and that the said defendants operated their respective lines jointly, so that the deceased was required to operate engines over both of the lines continuously between Houston, Texas, and Lafayette, Louisiana, and that said deceased, together with other employes in such business, was subject to be discharged by either of the said defendants, and that the said defendants were virtually and practically partners in the conduct of said business; that the railway of the Louisiana Western Railway Company ran through a country in which there were great numbers of cattle, and which habitually grazed upon the right of way and track, and were a great menace to the safety of trains; and that in the exercise of ordinary care the said defendant company had constructed fences along the lines of its right of way so as to enclose said railroad track, and that the deceased and other employes of defendants looked to the defendants to use ordinary care in keeping the said fences in proper condition so as to avoid collision between the trains and the cattle; that on the date of the alleged injury, while deceased was operating his locomotive and drawing a passenger train from Houston to Lafayette over said railway, and near the station of Sulphur, in the State of Louisiana, and at night, the locomotive came in contact with a cow and was thereby derailed, as a result of which William T. Miller, the engineer, was seriously injured, and thereafter died as result of such injuries. The plaintiffs alleged negligence on the part of defendants and each of them in several particulars, which it is deemed unnecessary at this point to detail, and prayed for judgment in the sum of thirty thousand dollars.

"The defendant Louisiana Western Railway Company filed its answer, setting forth the following defensive matters: (1) A plea in abatement and to the jurisdiction of the court, alleging that the injury and death for which the suit was brought occurred entirely within the State of Louisiana and beyond the limits of the State of Texas,

and that the right of action and remedies (if any) in favor of plaintiff were governed and regulated by the laws of Louisiana on the subjects involved, and that the laws of Louisiana, both with regard to the right of action itself and the remedies and measure of damages and defenses involved, were conflicting and inconsistent with the laws and policies of the State of Texas to such extent that it was contrary to the law and the comity between the States for the courts of .Texas to take cognizance of or entertain jurisdiction in said cause for the purpose of administering the laws of Louisiana applicable thereto; (2) a general demurrer; (3) general denial; (4) contributory negligence; (5) that the negligence (if any) causing the derailment and injury and death of deceased was that of a fellow servant; (6) that the injury resulted from a risk assumed by deceased as incident to the service, and known to him; (7) that the Act of the Louisiana State Legislature incorporating the Louisiana Western Railroad Company had granted it special immunity and exemption from any liability or responsibility for injuries to those in its employment operating trains, and that the said defendant, by accepting and acting under the charter with the said provision of immunity therein, acquired vested con-'tract rights from the State, and the legislation subsequently enacted for the purpose of creating actions for injury resulting in death in the State of Louisiana, and which right of action was depended upon as the basis for recovery against said defendant in this cause, was an attempt to impair the obligation of a contract, and hence void under the Constitution of the States of Louisiana and Texas and of the United States; and (8) a plea in bar of the action, that the laws of Louisiana applicable to the right of action (if any) sought to be enforced, and the remedies therefor and the defenses thereto, were radically in conflict with the laws and policies of the State of Texas.

"The defendant Texas & New Orleans Railroad Company filed its amended answer containing substantially the same defenses as those asserted by its co-defendant, Louisiana Western Railroad Company, above recited, and embraced in addition thereto a special plea, verified by oath, denying the allegations in plaintiff's petition with reference to the existence of a partnership relation between the two defendants in the operation of their respective railroads.

"The pleas in abatement and to the jurisdiction of the court, with evidence in support thereof, were duly submitted to the court on January 30, 1909, and on the same date overruled, to which rulings the defendants each excepted; and thereafter, on the same date, the general and special demurrers of each of the defendants also were overruled.

"Afterwards, on the same date, January 30, 1909, the cause was tried on its merits before the judge and without a jury, and judgment was rendered in favor of the plaintiffs against the defendants, jointly and severally, for the sum of sixteen thousand dollars, apportioned as follows: To Fannie L. Miller, the widow, $8,000; to George W. Miller, $2,000; to William D. Miller, $2,500; to Dorace H. Miller, $3,500.

"The court, in connection with such judgment, upon request, filed his conclusions of fact and law, and to this judgment and to each and

all of the conclusions the defendants, and each of them, then and there excepted and gave notice of appeal, and said exceptions were duly entered upon the judgment record; and upon application of the parties a period of twenty days from and after the adjournment of the term of court was allowed for filing statement of facts and bills of exception."

From the judgment the defendants prosecute this appeal.

The first assignment complains of the court's overruling the plea of each defendant in abatement and to the jurisdiction of the court. The proposition advanced under the assignment is as follows: "A suit or action instituted in the courts of Texas on a cause of action growing out of injury in the State of Louisiana resulting in death, must be tried, if at all, according to the laws of the State of Louisiana; and when the laws of said State applicable thereto, either as to the right or remedy or defense, are essentially different from those of this State, the courts of Texas will not entertain jurisdiction of such suit or action."

It is said by Wharton on Conflict of Laws (3d ed., sec. 480a): "It is now established by the overwhelming weight of authority that a statute creating a cause of action for damages sustained by the relatives or next of kin of the deceased is not penal, and that the cause of action is transitory, and may therefore be enforced in any State or country whose public policy is not opposed to the recognition and enforcement thereof."

In a note illustrating the part of the text quoted it is shown that, while Willis v. Missouri Pac. R. Co., 61 Texas, 432, contains expressions apparently in conflict with the general principle stated, it was not involved, nor such expressions necessary to the decision of the case, there being no statute of Indian Territory creating such right of action shown. It is further observed that: "Subsequent cases in Texas have treated the general question as an open one, though they have denied jurisdiction upon the ground of the dissimilarity of statutes (Texas & P. R. Co. v. Richards, 68 Texas, 375; St. Louis, I. M. & S. R. Co. v. McCormick, 71 Texas, 668), or upon the ground that the statute of Texas did not apply to torts occurring outside of Texas (De Harn v. Mexican Natl. R. Co., 86 Texas, 68)."

The correctness of the observation is thus shown: In Texas & P. R. Co. v. Richards, *supra,* the right to maintain in this State an action for the death of a person arising under the statute of another State was denied upon the ground that there was no similar statute here, but the court said that it seems to be generally held that the right given by the statute of one State will be enforced in the courts of another State giving a like right of action under the same facts.

In St. Louis, I. M. & S. Ry. Co. v. McCormick, *supra,* the refusal to entertain the action was expressly put upon the ground of the dissimilarity between the statute of Arkansas, under which the cause of action arose, and the statute of Texas, and the court observed that the utterance of Chief Justice Willie, in Willis v. Missouri Pac. Ry. Co., 61 Texas, 432, was neither adopted nor repudiated, but that the main question was left open, as in Texas & P. R. Co. v. Richards.

In De Harn v. Mexican Natl. Ry. Co., 86 Texas, 68, the court al-

luded to the fact that it had been held that if the law of the State where the injury was inflicted gave substantially the same right of action which was given by the law in the State where the suit was brought, and in favor of the same parties, by reason of the principle of comity the right will be enforced in the latter State, but says that the question was left open in St. Louis, I. M. & S. Ry. Co. v. McCormick. The court, however, did not pass upon the question. See also Cooper v. Gulf, C. & S. F. Ry., 41 Texas Civ. App., 596 (93 S. W., 201).

It seems that the question as to whether an action for damages for injuries resulting in death, created by the statute of another State where the injury occurred, can be maintained in Texas, has never been directly decided; and that, while such actions have been brought, they have always failed on account of the dissimilarity of the laws of the jurisdictions where the injuries occurred and the statute of this State which gives such right of action. Though it seems that the leaning of the Supreme Court is towards the rule above quoted from Wharton, where there is no such dissimilarity of the statute which gives the action where such injury was inflicted, from that of this State which confers the right, as prevents the right given from being substantially the same in one jurisdiction as in the other. It is, however, in such a case, the statute of the State creating the right of action—not ours—which must be looked to and be enforced, not as obligatory on our courts, but purely as a matter of comity due by one State to another.

As is said by Wharton on Conflict of Laws (vol. 2, sec. 480b): "The existence of a statute of the forum substantially like the foreign statute under which the cause of action arises is, of course, the best and most conclusive indication that it is not contrary to the public policy of the forum to entertain the action; and the majority of cases either hold or assume that there must be such a statute at the forum in order to uphold the jurisdiction of a cause of action arising under the foreign statute. . . . Assuming, however, that the existence of a statute of the forum similar to that of the State or country where the cause of action arose is a condition of the jurisdiction, it is not essential that the statute be precisely the same. It is sufficient if they be substantially alike or of the same import and character."

If, then, upon examining the statute of Louisiana upon which plaintiffs' cause of action, if any they have, must necessarily rest, it should be found essentially different from ours, which confers a right of action in cases of personal injuries resulting in death, we shall, like the Supreme Court has done in the cases referred to, leave the question still open, for we have no desire to anticipate that court in closing such a question.

The witness H. P. Dart, after qualifying as an expert upon the laws of Louisiana, testified in response to interrogatories as follows:

In response to direct interrogatory No. 4: "The law of Louisiana confers a right of action for personal injuries inflicted by the wrongful conduct of another. In case of death the action survives for one year from the death in favor of the minor children or widow of the deceased or either of them, and in default of these in favor of the

surviving father and mother or either of them. This action does not survive in favor of any other relative. It has been decided, for instance, that grandparents are excluded from its benefits. The remedy thus afforded is statutory, and appears in slightly different form in the earliest Code of Louisiana (see Digest of the Civil Laws, etc., published in 1808, sec. 11, art. 16, p. 320), and has been amended from time to time, and is now known as article 2315 of the Revised Civil Code of Louisiana of 1870, which is the date of the last general revision of the Civil Code of Louisiana. This article has been amended by the Legislature of Louisiana since the date mentioned, the most recent amendment being that of 1884, so that the article now reads as hereinafter set forth."

Referring to the statute as it exists today in the State of Louisiana, and existed at the time of the injury and death of Miller and Gross, the witness said:

"As it exists today, the same will be found printed in Merrick's Annotated Edition of the Revised Civil Code of Louisiana as article 2315, page 559, and it is in the following language: 'Article 2315: Obligation to Repair Damage Caused by Wrongful Acts; Survivorship of Action. Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it; the right of this action shall survive, in case of death, in favor of the minor children or widow of the deceased, or either of them, for the space of one year from the death. The survivors above mentioned may also recover the damages sustained by them by the death of the parent or child, or husband or wife, as the case may be. . . .'

"The State courts of Louisiana recognize and resort to the foregoing statute as the basis of authority for all cases involving actions or claims of personal injury. There is no law or authority for such an action in the courts of Louisiana other than the article of the Civil Code aforesaid and the amendments thereto. The Civil Code, however, contains nine articles on the general subject, which in Louisiana goes by the title of 'Offenses and Quasi Offenses.'"

Continuing, the witness further says: "Before the adoption of the amendment of 1884 these statutes were construed as limiting the survivor's action to the right of action which the deceased would have had had he survived the injury. Citing Vredenburg v. Behan, 33 La. Ann., 643. After the passage of the Act of 1884 the court declared that the Act created 'an obligation, by expressly declaring the existence of a liability where there was none before, and opens the way to a recovery for its violation.' Citing Van Amberg v. Vicksburg, S. & P. Ry. Co., 37 La. Ann., 652; Eichorn v. New Orleans & C. R. L. & P. Co., 112 La., 250; 36 So., 335."

The witness H. P. Dart, referring to the measure of damages in the State of Louisiana allowable under the amended Act of 1884 of that State for injuries resulting in death, says:

"Therefore, as the law stood at the date of this accident, and as it now stands, the survivors may recover: (1) The damages the decedent might have recovered had he lived, such as compensation for his pain and suffering; for his loss of wages or earnings during the time intervening between the accident and his death; for his dis-

figurement; for the expenses of his illness.   These are called heritable damages.

"(2) The loss by deprivation of the decedent's society and his aid and support, also the expenses of his death and burial."

On both propositions see: Eichorn v. New Orleans & C. R. L. & P. Co., 114 La., 718 et seq., 38 So., 526; Payne v. Georgetown Lumber Co., 117 La., 991, 42 So., 475; Dobyns v. Yazoo & M. V. Ry. Co., 119 La., 82, 43 So., 934.

"(3)   To these elements the court has now added recovery for mental suffering of the survivor.   See Stewart v. Arkansas So. R. Co., 112 La., 767, 36 So., 676, as applied in Graham v. Western U. Tel. Co., 109 La., 1070, 34 So., 91; Parker v. Crowell & Spencer Lumber Co., 115 La., 463, 39 So., 445; and note the qualification in Brinkman v. St. Landry Oil Co., 118 La., 835, 43 So., 458.

"(4) Vindictive or punitory damages are not permitted in actions for personal injury against a corporation.   McGary v. City of Lafayette, 12 Robinson (Louisiana Reports), 675; McFee v. Vicksburg, S. & P. R. Co., 42 La. Ann., 790; Patterson v. New Orleans & C. R. L. & P. Co., 110 La., 797, 34 So., 782, and Parker v. Crowell & Spencer L. Co., 115 La., 468.

"(5) No action lies under the statute in favor of the surviving child who had reached the age of majority before the accident.   Huberwald v. Orleans R. R. Co., 50 La. Ann., 477, 23 So., 474.   In Eichorn v. New Orleans & Carrollton R. R. L. & P. Co., 114 La., 712, 38 So., 529-531, you will find that the child's right of action was recognized where the child, being a minor at the date of the accident, had reached majority since then.   The age of majority in Louisiana is twenty-one years.   Where the action runs in favor of minors, the damages are apportioned according to their respective majorities. See Eichorn's Case, 114 La., 726.

"(6) Children, under the Code of Louisiana, article 229, 'are bound to maintain their father and mother and other descendants who are in need;' on the other hand the child, under article 216 of the Civil Code, remains under the authority of his parents until his majority.

"There is also further provision, articles 230, 231, defining alimony as 'what is necessary for the nourishment, lodging and support of the person who claims it.'

"In Myhan v. Louisiana Electric Co., 41 La. Ann., 969, the parents claimed for the death of a son of eighteen years.   The court, referring to his duty, said: 'The probability is that he was a robust young man, attentive to his duties and kind to his parents; he would have advanced in life and bettered his and their condition.   In the course of years he would have accumulated earnings to some reasonable extent, due regard had to his personal wants and necessities, etc.'

"This would indicate that the child over majority owes certain obligations to his parents.   I do not think these are the same he would owe or that they could expect from a minor."

Under our statute the action given is for the sole and exclusive benefit of the surviving husband, wife, children and parents of the deceased.   Under that of Louisiana it is in favor of the minor children or widow of the deceased or either of them, and in default of

these, in favor of the surviving father and mother or either of them. Hence, these differences are apparent from the faces of the respective statutes: (1) Under the one, all the children of the deceased, whether minors or adults, are given the right of action; under the other, the children to whom the right is given are only the minors. (2) By that of Texas, the parents of the deceased can recover as well as the wife and children; under that of Louisiana, they are given the right of action only in default of minor children or widow of the deceased.

That a different law of distribution prevails in different jurisdictions does not prevent the maintenance in one jurisdiction of a cause of action for death arising under the statute of another jurisdiction, since the distribution is to be made according to the law of the State where the cause of action arose, and the courts of the forum can see that the distribution is so made. Dennie v. Central R. Co., 103 U. S., 11, 26 L. ed., 439; McDonald v. McDonald, 96 Ky., 209, 28 S. W., 482; Nelson v. Chesapeake & O. R. Co., 88 Va., 971, 15 L. R. A., 583, 14 S. E., 838. As the plaintiffs in this case would, under the statute in this State had the cause of action arisen here, have been entitled to recover, it could make no difference that others could also have recovered, since the amount recovered is distributed by the judgment to the persons entitled to take under the law where the cause of action arose. Since the surviving wife and minor children of the deceased could have recovered under our statute had the accident occurred in this State, we are unable to perceive how it could be against public policy to prevent them recovering in our courts under the law of Louisiana, which gives them the same right of action, though it withholds from others rights they would have had if the cause of action had arisen in this jurisdiction.

The weight of authority is against the view that dissimilarity affecting persons by or for the benefit of whom the action may be maintained and the proportion in which the fund recovered shall be distributed, will defeat the jurisdiction. Boston & M. R. Co. v. McDuffey, 25 C. C. A., 247, 79 Fed., 934; Davidow v. Pennsylvania R. Co., 85 Fed., 943; Stoeckman v. Terre Haute & I. R. Co., 15 Mo. App., 503; Wooden v. Western N. Y. & P. R. Co., 126 N. Y., 10; 13 L. R. A., 458; 22 Am. St. Rep., 803; 26 N. E., 1050; Boston & Maine R. Co. v. Hurd, 56 L. R. A., 196; 47 C. C. A., 615; 108 Fed., 116; Moore v. Pywell, 9 L. R. A. (N. S.), 1078; Connor v. New York, N. H. & H. R. R. Co., 18 L. R. A. (N. S.), 1252; 68 Atl., 481; 28 R. I., 560; 2 Whart. Conf. of Laws, sec. 480b, p. 1123.

There are other dissimilarities also as to the elements of damages apparent from the evidence quoted; for example, in the jurisdiction where the cause of action arose damages for pain and suffering of the deceased are allowed, which are not elements of damages in this State unless the injured party had himself brought suit therefor, and after his death—such action surviving—it was prosecuted for such damages. This dissimilarity, however, will not defeat the jurisdiction of the courts of this State. Boyle v. Southern R. Co., 73 N. Y. Supp., 465. But, upon examination of the authority (Payne v. Georgetown Lumber Co., 117 La., 991, 42 So., 475) upon which the expert witness Dart bases his opinion that the survivors "may recover the dam-

ages decedent might have recovered had he lived, such as compensation for his pain, for loss of wages or earnings during the time intervening from the accident until his death, for his disfigurement and for his illness, it does not appear that the law of Louisiana, in regard to such items of damages, is substantially different from our own. That was a suit originally brought by Payne, the injured party himself, for such damages. Pending the suit the original plaintiff died, and, as his right of action survived under the law of Louisiana—as such an action does in this State—his widow and minor children made themselves parties plaintiff to the suit and prosecuted it to judgment, recovering such damages as he would have been entitled to obtain had he survived. Such a recovery could have been had under the laws of this State had the injuries occurred here. Galveston, H. & S. A. Ry. v. Heard, 91 S. W., 371. There is nothing to indicate that such damages are recoverable in Louisiana in a case where the deceased did not survive his injuries.

Again, "the loss by deprivation of decedent's society and his aid and support," as items of damages, when considered in the light of the opinion (Eichorn v. N. O. & C. R. Light and Power Co., 114 La., 718, 38 So., 526), upon which the opinion of the witness that such damages are recoverable is based, are not different from what is recoverable by minor children under the laws of Texas for the wrongful death of their parents. That was a suit by minor children alone, the wife having in a prior suit recovered her damages for their father's death, and it was held that the object of the law, so far as the children are concerned, "was to save them harmless during their minority from the loss of the benefits (material and moral) which they would have received had their father lived up to the time of their respective majorities to provide for their temporary needs—to tide them over to majority under as favorable conditions as they would have been tided over had their father not been killed." See Galveston, H. & S. A. Ry. v. Davis, 27 Texas Civ. App., 279 (65 S. W., 217); Gulf, C. & S. F. Ry. v. Younger, 90 Texas, 387; Gainesville, H. & W. Ry. v. Lacy, 86 Texas, 244; Beaumont Trac. Co. v. Dilworth, 94 S. W., 353.

In Louisiana, in assessing damages for the death of her husband, the wife's distress and mental suffering inflicted by her deprivation of his companionship are elements of damage to be considered. While no such elements of damages can be considered in cases where a cause of action for wrongful death arises in this State, no difficulty can be perceived in allowing and enforcing a judgment for such damages by the courts in Texas. While such are not regarded as elements upon which compensation for the loss of a husband can be based in this jurisdiction, yet there is another class of cases where distress and mental suffering, arising even from the temporary absence of the husband through the negligence of a telegraph company in failing to properly transmit and deliver a telegram, are recoverable, and compose the principal elements of the damages. Nothing deters our courts from assessing and enforcing a judgment for such damages; and, as a case of this character must be tried in accordance with the *lex loci delicti*, we do not think the difference in the laws of Louisiana and of Texas is so essential as to require our courts to withhold juris-

diction in such cases. Under the law of both jurisdictions pecuniary compensation to the wife and children of the deceased is the purpose sought to be attained by their respective laws; in one, certain matters are regarded elements of such compensation, while in the other they are not. That is all.

The case is not akin to that of Mexican Natl. R. v. Jackson, 89 Texas, 107. There the dissimilarity in the *lex loci delicti* and of the *lex fori* was so great that a judgment rendered in accordance with the one could not be enforced under the other. But here the judgment can be rendered in our courts in accordance with the law of Louisiana and enforced under the laws of Texas just as well as any judgment rendered in accordance with its statutes can.

We conclude, therefore, that public policy of Texas is not opposed to the recognition and enforcement of the law of Louisiana regarding cases of personal injuries resulting in death, there being no such essential difference in the laws of the respective States as would warrant either in withholding that comity due from one to the other.

The fact that the Act incorporating the Louisiana Western Railroad Company contains a provision exempting that company from liability for injuries such as were inflicted on the deceased, Miller, and on which this suit is based, offers no barrier to the courts of this State entertaining jurisdiction of this case, especially as to the Texas & New Orleans Railroad Company. It is a fundamental principle of law that one Legislature can not deprive another of the right, or restrain it in its duty, to legislate in the interest of the general public. No such surrender of legislative power can be tolerated unless authorized by the Constitution. It is the rights of the general public, not of private parties as against the interest of the public, that must be conserved by legislation. The provision referred to in the charter of the Louisiana Western Railway Company has never been invoked in the jurisdiction of its enactment to shield it from its liability for injuries such as are shown to have been inflicted in the case before us, nor do we think ever can be successfully. If force and effect should be given it, the consequence would be to prevent the Legislature of a sovereign State from ever passing a uniform law holding railroads liable for wrongs such as are complained of in this case. The people, voicing the fundamental law of the realm, only can do this. The Act of no one Legislature can have the force and effect of the Constitution, which, in uttering the will of the people to the Legislature, says: "Thus far shalt thou go, but no further."

Nor does the fact that the fellow-servant doctrine obtains in Louisiana in cases of this character, as at common law, offer any obstacle to the jurisdiction of our courts in cases like this. Such doctrine affects the remedy rather than the substantive right created by statute. That such doctrine once obtained in this State in its application to cases of personal injuries inflicted by the negligence of railroad companies, and still exists in other cases of negligence, shows that our courts have no difficulty in its application.

For these reasons we overrule the appellants' first assignment of error, and in doing so close for the time a question which has been

opened and shut by the Supreme Court, as we dare say will be done again *ad libitum*.

The second assignment of error, which complains of the court's overruling the general demurrer of each defendant to plaintiff's petition, presents a more serious obstacle to the affirmance of the judgment than the one just disposed of.

It appears from the face of the petition that the deceased, William T. Miller, died from injuries inflicted upon him entirely in the State of Louisiana and outside the limits of the State of Texas. There was no allegation in the petition of any law in the State of Louisiana conferring a right of action upon any one for injuries resulting in death. The insistence of defendants is that, in the absence of such an allegation, no cause of action was shown by the petition. The general rule is that the right to recover damages resulting from personal injuries is governed by the law of the place where the injury was received. This well-established rule applies to actions brought to recover damages for injuries causing death. If, therefore, there is no legislation of the State where the injury causing death was inflicted, then no right of action exists. While, if the plaintiffs had pleaded that a cause of action for injuries resulting in death existed under the laws of Louisiana, the presumption might be indulged that the law there is the same as in this State; but we can not perceive, in the absence of an averment of the existence of a law according such right of action, how its existence can be assumed. Such an assumption must be made before it can be presumed that the law of another State is the same as ours. The rule is general that, in the absence of an express statute of the forum to the contrary, the court will not take judicial notice of the law of a foreign country. This principle applies to the laws of another State of the Union; in other words, the several States of the Union are foreign to each other for the purposes of this principle. When, then, as in this case, the right of action necessarily rests upon a foreign law, the existence of the law must be averred in order to disclose such right. When such an averment is made, the presumption, in the absence of evidence to the contrary, that such law is the same as that of Texas, is simply taken as proof of the averment, but it does not supply the averment, as well as furnish the proof. But when the answer of defendants, which pleads the law of Louisiana upon which the action is grounded, is looked to and considered in connection with the averments in the petition, this defect is cured. Lyon v. Logan, 68 Texas, 524; Boettler v. Tindick, 73 Texas, 488; Hill v. George, 5 Texas, 89; Grimes v. Hagood, 19 Texas, 246; Bourke v. Vanderslip, 22 Texas, 222; Gaston v. Wright, 83 Texas, 282; Red River Natl. Bank v. De Berry, 47 Texas Civ. App., 96 (105 S. W., 1000). We therefore overrule appellants' second assignment of error. The effect of this ruling is to in like manner dispose of the third assignment, which complains of the court's overruling defendants' special exceptions to plaintiffs' petition, the ground of the exceptions being substantially that urged under their general demurrer.

Before proceeding to the consideration of the remaining assign-

ments, we will state the conclusions of fact, which we adopt, of the trial court. They are as follows:

"1. That the plaintiff, Fannie L. Miller, is the surviving wife, and the plaintiffs George W. Miller, William D. Miller and Dorace H. Miller are the surviving children of William T. Miller, deceased, and the said plaintiffs and deceased, at the time of his death, on to wit, June 1, A. D. 1905, were citizens of the State of Texas, and resided in Harris County, in said State; that the defendant Texas & New Orleans Railroad Company, hereinafter referred to as the 'Texas Company,' was on said date a railway corporation duly incorporated under the laws of the State of Texas, and owned, and for a long time prior thereto had owned, a line of railway extending from Houston, in Harris County, to the State line between Texas and Louisiana; that the defendant Louisiana Western Railway Company, hereinafter referred to as the 'Louisiana Company,' was on said date a railway corporation duly incorporated under the laws of the State of Louisiana, and owned, and for a long time prior thereto had owned, a line of railway extending from said State line opposite Echo to Lafayette, in the State of Louisiana, and that both said defendants on said date, and for a long time prior thereto, were jointly engaged in the business of operating the said railways as one continuous line from Houston, in said Harris County, Texas, to Lafayette, in Louisiana, and in so doing used indiscriminately on either the engines, rolling stock and employes of the other as the business or convenience required; and each hired and discharged employes in the said joint business, and the employes hired by one were required to perform and did perform services on the railway of the other; that such employes made continuous runs on trains operating from Houston to Lafayette, and *vice versa,* and that both defendants were jointly engaged as common carriers of freight and passengers for hire between Houston and Lafayette over said railways as a continuous route, and were partners in such business, sharing in the profits and losses thereof.

"2. That the railway of the Louisiana Company ran through a country in which there were numbers of cattle, and the said company fenced its right of way for the purpose of excluding cattle therefrom, and that the fences were effectual to exclude cattle from the right of way when ordinary care was used to keep them in proper repair, and when such care was used to keep the gates closed; and the employes operating trains over the said railway relied upon the companies to keep the fences in repair and the gates closed, to the end that they might not be exposed to the peril of injury or death by derailment of engines and cars coming in contact with cattle which would otherwise enter upon the right of way and track.

"3. That on to wit, June 1, A. D. 1905, the said deceased, William T. Miller, was in the employ of defendants in the capacity of engineer of locomotives drawing passenger trains operated by defendants over their said railways between Houston, in said Harris County, Texas, and Lafayette, Louisiana, and was, on said date, engineer of a locomotive drawing one of the defendants' passenger trains running from Houston to Lafayette over said railways; and that upon the train

**Vol. LX Civil—41.**

getting near a station known as Sulphur, in Louisiana, in the night-time, the locomotive struck an animal of the cow species, and was thereby, together with a number of cars, derailed, and the said Miller then and there injured, so that as result thereof he died.

"4. That some hours previous to the derailment of Miller's locomotive another of defendants' trains had struck and killed an animal of the cow species near the place of the derailment, and the carcass was allowed to lie upon the right of way, within a short distance of a gate in the right of way fence; and that several hours prior to the derailment a number of cattle entered the right of way through the said gate, and were seen by employes of defendants in charge of one of the defendants' eastbound trains, gathered about the dead one, holding a 'ceremony,' as expressed by one of the witnesses; that the said cattle were probably attracted upon the right of way by the dead one; and I find that defendants knew, or would have known by the exercise of ordinary care, of the presence of the dead animal upon the right of way, and knew, or would have known by the exercise of such care, that if the gate was open cattle would probably be attracted therein by the dead one, or would enter therein of their own volition, and knew of the presence of the cattle which were gathered about the dead one in time to have notified Miller of that fact, and in time to have had the said cattle removed from the right of way; and I find that it was the duty of defendants and the section men upon the section upon which the said cattle were, to have removed said cattle, or, failing so to do, that it was the duty of defendants to notify said Miller of the presence of said cattle upon the right of way, and that they could have notified him, and in that case he would have been upon the lookout for said cattle and probably have avoided striking the one which he did, or have so slackened the speed of the train as to have prevented the derailment thereof; and I find that defendants were guilty of negligence in permitting the cattle to be and remain upon the right of way under the circumstances, and in failing to remove them from the right of way before the accident, and in not giving the said Miller notice of their presence upon the right of way, and that such negligence was the proximate cause of the death of Miller. And that plaintiffs were actually damaged by his death in the sum hereafter stated.

"5. That there is a substantial similarity between the laws of Louisiana and the laws of Texas, giving right of action for injuries resulting in death; and, under the law of Louisiana, that Miller was not a fellow servant of those whose negligence caused his death; and that he did not assume the risk of injury which resulted in his death, and was in the exercise of ordinary care."

The fourth, fifth, sixth and seventh assignments, and the propositions asserted thereunder, all relate to the action of the court in admitting evidence as to what the statute law of Louisiana was in relation to actions for injuries resulting in death, the admission of such evidence being complained of upon the ground that there was no allegation in plaintiffs' petition authorizing proof thereof. Since, as we have held, the omission of such allegation was supplied by the de-

fendants pleading such law, it follows that such evidence was properly admitted.

As to the provision in the legislative charter of the Louisiana Western Railway Company relieving the company from liability for injuries resulting in the death of its train operatives, we will remark that such provision was not, within the purview of article X, section 1, of the Constitution of the United States, such a contract between the railroad company and the State of Louisiana as the State was inhibited from impairing an obligation. As before intimated, the power of the State to exercise its general legislative functions could not be traded or bartered away in any such manner. It is a general principle that the Legislature can not diminish the power of its successors by irrepealable legislation; for if it could, one Legislature might so fetter its successors as to destroy the functions and powers of representative government. Railroad companies are public service corporations, chartered, maintained and run in the interest of the public, and can not break or be let loose from the power or control of the public without becoming the masters instead of the servants of the people. "Where the wicked rule, the people mourn." And groans of oppression come from the people, in tones louder than whispers, in those States where railroads dominate. It is not left to conjecture what the ruling of the Supreme Court of the United States would be, if a case arising under the Employers' Liability Act should come before it involving the question of immunity from liability claimed here by the defendant under its charter. That great and pure tribunal with one breath would blow it away as though it were but thistle down; and yet, an Act of Congress can no more impair the obligation of a contract than can the Act of a State Legislature. The safety of passengers and expeditious carriage of freight depend in a large measure upon the preservation of the lives of the train operatives; and no better way has ever been devised to secure these ends than to hold railroad companies liable for the death of train operatives resulting from the negligence of such companies. So an Act creating such liability, though the damages are given to the members of the deceased's family, may be regarded in one sense of the term an exercise of the police power of the State—a power of which it can not be divested by the Legislature. If the Constitution itself should endeavor to inhibit the exercise of such power, it would simply result, if heeded, in the destruction of the principal functions of government. So we take it that, if the provision in the charter ever had any force, it was in effect repealed by the Act of 1884, giving certain persons a right of action for the death of a relative, caused by negligence.

What we have just said also disposes of the eighth assignment of error.

The ninth assignment of error complains that the court erred in that part of its first conclusion of fact commencing immediately after the clause, "and resided in Harris County in said State," and continuing to the end of said conclusion. The facts embraced in the findings are shown by the undisputed evidence; and, so far as the liability of the defendants is concerned, it can make no difference whether they establish a "partnership" in the legal sense of the term or not.

For the facts found are such as make them jointly and severally liable for injuries inflicted by each other upon an employe of both while engaged in their common service. -

The remaining assignments complain of the court's findings of fact and entering judgment upon them. The evidence supports the findings, and the facts found are sufficient to support the ultimate conclusions that the defendants were guilty of negligence, and that such negligence was the proximate cause of Miller's death.

There is no error which requires a reversal of the judgment, and it is affirmed.

*Affirmed.*

Writ of error refused.