MISSOURI PACIFIC RAILWAY COMPANY v. CHARLES MOFFATT et al.

No. 10946.

1. NEGLIGENCE—*Petition—Amendment.* A petition alleging negligence in general terms may be amended so as definitely to set forth the facts constituting such negligence, although the statutory period of limitation for the bringing of such an action has expired when the amendment is made.

2. REVIVOR—*Next-friend.* Proceedings in revivor are not necessary in substituting a new next-friend for one who had previously acted in behalf of an infant.

3. NEGLIGENCE—*Railroad Crossing—Inference.* The fact that a man killed on a railroad crossing was careful and sober, and had previously exercised due care in passing over the same crossing, tends to repel any inference of negligence arising from the mere fact that he went upon the track when a train was approaching.

4. ——— *Fatal Injuries—Measure of Damages.* In an action by the next of kin to recover damages for death caused by the wrongful act of the defendant, it is not essential to a recovery that any witness shall have testified to the pecuniary value of the deceased's services, or the profits which he derived from his business, but ordinarily a sufficient basis for an award of damages may be found in the character, habits, capacity, business and condition of the deceased, as well as the age, sex, circumstances and condition in life of the next-of-kin.

5. SPECIAL QUESTIONS—*Withdrawal.* The action of the court in permitting the withdrawal by plaintiffs of a list of special questions of fact after the same had been submitted to the jury will

| 60 | 113 |
| 63 | 723 |
| 60 | 113 |
| d66 | 769 |
| 60 | 113 |
| 73 | 252 |
| 60 | 113 |
| e78 | 246 |
| 79 | 583 |
| 60 | 113 |
| 82 | 174 |

*Succeeded Hon. STEPHEN H. ALLEN, January 9, 1899.

8—60 KAN.

not be deemed prejudicial error where it does not appear that the special questions which were submitted in behalf of the defendant were framed with reference to those asked by the plaintiffs and allowed to be withdrawn, or that the defendant was in some way prejudicially affected by the withdrawal.

6. DAMAGES—*Evidence Sufficient.* The evidence examined and held to be sufficient to sustain the verdict and findings.

Error from Wyandotte district court; HENRY L. ALDEN, judge. Opinion filed January 7, 1899. Affirmed.

*Waggener, Horton & Orr,* for plaintiff in error.

*Hutchings & Keplinger, Hale & Fife,* and *James F. Mister,* for defendants in error.

The opinion of the court was delivered by

JOHNSTON, J. : This is the second time that we have been called upon to review the proceedings in the trial court in this case. (*Mo. Pac. Rly. Co. v. Moffatt,* 56 Kan. 667, 44 Pac. 607.) On the first review it was held that the averments of the petition were not sufficiently specific to justify the admission of proof of the negligence of the company beyond its failure to give proper signals and due warning of the approach of its trains, and because the trial court admitted testimony and submitted grounds of negligence to the jury not definitely pleaded, the case for that and other reasons was remanded for a new trial. After it was so remanded the plaintiffs below amended their petition by alleging that the railway company was negligent in failing to give signals other than those required by the statute, and in failing to have a gate, a flagman or an electrical alarm at the highway crossing where Andrew C. Moffatt was struck and killed by a locomotive attached to one of its passenger-trains. Several years intervened between the filing of the original petition and

the amendment, and it is now claimed that the court· was not warranted in permitting the plaintiff to set up the additional grounds of negligence.

The company assumes that a new cause of action is stated in the amended pleading, and it is contended that as to such new cause of action it must be deemed to have been commenced when the amendment was made, and not when the action itself was commenced, and·therefore that it was barred. This contention cannot be successfully maintained. No new cause of action was set forth in the amended petition. The cause of action set forth in each of the pleadings was the negligent killing of Andrew C. Moffatt. In the original petition it is alleged that on the morning in question the company ran its engine and cars at a high rate of speed over a dangerous crossing without giving any warning of the approach of the train, and without using the bell or blowing the whistle, "and without using any other lawful, safe and prudent methods of notifying the public or said Andrew C. Moffatt of the approach of said engine and cars." It will be observed that the only negligence specifically alleged was the failure to blow the whistle and ring the bell, and for that reason the petition was held to be defective. The pleading did set forth in a somewhat indefinite way that the company failed to take other precautions which it should have taken, and which might have averted the injury. The amended petition set forth definitely that which had been pleaded generally in the original petition, and therefore it cannot be said that a new cause of action or a new ground of recovery was introduced.

The next exception was to the allowance of a new next-friend to appear for the three infant plaintiffs.

*1. Amendment of petition to show facts.*

It appears that after the first trial Eliza
M. Moffatt, who acted as the next-friend
for three of the minor children, died, and
when the last amended petition was filed Charles
Moffatt, who in the meantime had reached majority,
was named as the next-friend of Wilbur and Florence
Moffatt. It is contended that by the death of Eliza
M. Moffatt the action become dormant as to the infant
plaintiffs, and that another next-friend could only be
substituted by proceedings in revivor, and that as
there had been no revivor the action was abated.
While the action of an infant under the statute may
be brought by his guardian or next-friend, the infant
is the real party to the proceeding. The infants were
parties to the proceeding from its inception, and their
rights, which were involved in the action, belonged to
themselves. The next-friend had no title to or right
in the subject-matter of the action, but was merely
brought into court to protect the rights of the infant.
The court in which the proceeding is pending guards
the interest of the minors, and in the exercise of its
power may, when it becomes necessary, remove one
next-friend and appoint another. It is also true that
when the infant arrives at majority during the pen-
dency of the suit, that fact may be entered upon the
record, and he may thenceforth proceed in the suit
alone. No formal proceedings to revive are necessary,
as the next-friend is neither technically nor substan-
tially a party to the action, but only appears as an
agency of the court to guard and protect the interests
of the minors, who are the real parties to the proceed-
ing. The statute with reference to the revivor of pro-
ceedings has no application to cases where there is a
change of next-friend, and hence there was no abate-
ment of the action.

<div style="margin-left:2em">2. Revivor after death of next-friend.</div>

We are unable to agree with the claim that the evidence and special findings of the jury show contributory negligence on the part of Moffatt. The negligence of the railway company was sufficiently shown.

**3. Contributory negligence at crossing.**

The injury was carelessly inflicted on a foggy morning and at a dangerous crossing, when and where extraordinary precautions should have been taken by the traveler as well as the trainmen. It was shown and found that Moffatt was familiar with the crossing and appreciated the danger of passing over it; that on previous occasions, and when his son accompanied him, before attempting to make the crossing he required his son to get out of the buggy and go forward to the track to ascertain if a train was approaching; that he was alone when the accident occurred, and that he then knew and appreciated the danger of attempting to make the crossing without taking the same precautions that he had previously taken when his son was with him. The testimony as to the care exercised by Moffatt in approaching the track is very meager, but there is no affirmative testimony or any finding of a want of care on his part. There were only two eyewitnesses of the collision — the engineer and fireman on the train which struck Moffatt — and on account of the fog he was only discovered a moment before he was struck. They stated that the team was upon the track and that he appeared to check them. In the statement which he made before he died, Moffatt said that he did not discover the train until he was upon the track, and that the team would neither go forward nor backward. The train was traveling from thirty to thirty-two miles an hour, and it is evident that there was not sufficient time for him to get out of the way after he saw the train or after the

trainmen had discovered him. One of them states that he was not seen until the train was within forty feet of the crossing, and the other that he was not seen until the train was within 50 to 120 feet from the crossing. Whether he stopped and listened for the train, or whether he left his team and went forward to look for the train upon his approach to the crossing, is not shown, nor does anything appear to indicate that he failed to take reasonable precautions for his safety.

We cannot assume that he was guilty of contributory negligence. Aside from the instinct of self-preservation, there is proof that he was a sober, careful man, and had previously exercised due care for his safety on approaching the same crossing. Who can say that he did not stop, look and listen before going upon the crossing, or that he failed to exercise that degree of care which the conditions and circumstances required? He was a middle-aged man, with good health and the instinct of self-preservation strong within him, sober and exceedingly careful, and these facts and circumstances are not without weight in repelling any inference of negligence that might arise from the mere fact that he was upon the track and was struck by the locomotive. The plaintiffs are not required to show the absence of negligence, but before it can avoid the consequences of its negligence the company must show that Moffatt's injury and death were due to his own negligence. The claimed mismanagement of the team is of but little importance, since it is clear from the testimony that there was not sufficient time for him to drive the team off the track after the peril was discovered. The general verdict in effect finds that he was not negligent, and we discover nothing in the special findings inconsistent with the general verdict.

It is next contended that the evidence in the case did not afford a basis for the award of substantial damages. It was shown that at the time of the accident Moffatt was fifty-one years old, in good health, and that he supported a family of six children, four of whom were girls. One of the children only assisted in the support of the family. It is further shown that during the last years of his life he had been engaged in painting and calcimining, and also in the wall-paper and piano business. At the same time he was carrying on a farm near Kansas City. The testimony is that he was sober and industrious, but there is nothing in the testimony to show the amount of the earnings or profits which he derived from his labor and business. The standard for the measurement of damages is the pecuniary value of the life of the person killed to the beneficiaries. It is difficult to show direct and specific pecuniary loss which the next-of-kin suffer from the death, as the real value of a life is problematical and speculative to a certain extent. No fixed rule of measurement can be laid down, and much is necessarily left to the judgment and discretion of the jury. In estimating the damages the jury should take the facts proved in connection with the knowledge and experience possessed by them in common with men in general to determine the pecuniary value of the life taken. Mathematical accuracy in measuring the pecuniary loss suffered is not practicable, and in general it may be said that the basis for the allowance of damages may be found in the character, habits, capacity, business and condition of the deceased, as well as the age, sex, circumstances and condition in life of the next-of-kin. The court is of the opinion that with

*4. Measure of damages.*

the elements thus furnished the jury may make a fair estimate of the damages that are recoverable.

The writer is inclined to the view that the evidence is not sufficient as a basis on which to compute pecuniary loss. No evidence was given as to the amount which Moffatt earned or had earned, nor as to the amount of pecuniary aid or benefit which it would have been possible for him to give to his children in the future. The jury may very well consider his character and condition and his capacity for earning money and his expectancy of life, but some evidence should certainly be given of the profits of labor of the deceased, and what in all probability he might earn for the future support of his wife and children. While much must be left to the discretion and judgment of the jury, it is not unlimited; they must be guided by the fixed rules of law, and they cannot award substantial damages without proof of the extent and character of the pecuniary loss suffered. What his income was, what it had been, how much he was capable of earning, how much he had been in the habit of contributing to his children, and how much he would be able to contribute in the future, were facts which could have been easily proved, and which would have afforded a basis for the verdict rendered. No evidence of this kind was offered, and not even the expectancy of life was shown. In the absence of proof the jury were left to guess at or speculate upon the pecuniary value of Moffatt's life, and although they had no real basis for determining the extent of the plaintiffs' loss, they found a verdict for $5000. In the absence of proof of the extent of the pecuniary loss, the jury can allow nominal damages only.

Railway Co. v. Moffatt.

Complaint is made that the court refused to submit three special questions requested by the company.   Out of seventy-nine special questions proposed by the company only three were refused by the court, and these, in our judgment, are not material, and their refusal was not error.   The court also submitted sixteen particular questions of fact which were presented by the plaintiffs, and when the jury returned their general verdict these questions were left unanswered.   Upon the application of the plaintiffs they were withdrawn from the consideration of the jury over the objection of the company.   We think no error was committed in allowing the withdrawal of these questions.   They had not been requested by the party objecting to the withdrawal, nor does it appear that the fact that they were presented influenced or affected the company in presenting interrogatories in its own behalf.   It does not appear that the questions asked in behalf of the company were framed with reference to those asked by the plaintiffs below, or that the list presented in behalf of the company would have been longer or shorter by reason of the presentation of those which were subsequently withdrawn.   In the absence of a showing of prejudice by reason of the withdrawal it cannot be regarded as a reversible error.

5. Withdrawal of special questions from jury.

It is finally claimed that some of the findings are not supported by the evidence, and it appears that two of the answers are not strictly accurate.   In the view we take of the case, however, they are not deemed to be very material, and when the findings of the jury are considered together they do not betray any passion or prejudice, nor such a wilful disregard of the evidence as would warrant the overthrow of the verdict.   The judgment will be affirmed.