Railway Co. v. McLaughlin.

THE MISSOURI, KANSAS & TEXAS RAILWAY COMPANY
       v. HOMER McLAUGHLIN *et al.*
            No. 14,510.   (84 Pac. 989.)
            SYLLABUS BY THE COURT.

DAMAGES—*Death by Wrongful Act—Excessive Verdict.*  In an
    action for damages for death by wrongful act it appeared
    that the deceased at the time of his death was sixty-six years
    of age, unmarried, with no one legally dependent upon him,
    and that he was a farmer, living on leased land, and owned
    nothing except a small amount of personal property.  The
    plaintiffs, to whom he had made casual gifts, were his
    nephews and nieces, all in comfortable circumstances, whose
    ages ranged from twenty-one to forty years.  A verdict for
    $7000, under all the circumstances and facts in evidence, was
    excessive and should have been set aside.

Error from Labette district court; THOMAS J. FLAN-
NELLY, judge.   Opinion filed March 10, 1906.   Re-
versed.

                    STATEMENT.

ON the 22d day of October, 1903, J. G. McLaughlin
received injuries by a fall from a depot platform of
the Missouri, Kansas & Texas Railway Company at
Chetopa, in Labette county, from the effects of which
he died within a few days thereafter.  At the time of
his death he was sixty-six years old, and unmarried.
He was the uncle of the plaintiffs, of whom two are
his nephews and five his nieces.  This is a proceeding
in error from a judgment in their favor for $7000.

The deceased was a farmer, and lived in the Indian
Territory.  The father of the plaintiffs died about five
years before the uncle.  After the father's death the
widow, the two sons and one daughter, then unmar-
ried, moved to the uncle's place and lived with him.
At the time of his death the nephews and their mother
were still living with him, the niece having married
and moved away.  The ages of the plaintiffs were as
follow: Homer, the youngest, reached twenty-one in
the March following his uncle's death, Mrs. Alton was

twenty-three, James twenty-nine, **Mrs. Bracken** twenty-seven, Mrs. Simmons thirty-five, Mrs. Dwelley thirty-seven, and Mrs. King forty.    All the nieces are married, and the testimony shows that they are all in prosperous circumstances.    The deceased owned no land, and at the time of his brother's death was living alone on leased land in Indian Territory.    He then owned fifteen head of horses, a few hogs, and some farming implements.    The widow of his brother, with her two sons, owned and brought to the place seven head of horses, fifteen or twenty hogs, and a few cows. After that some of the stock were owned in partnership, and at his death the deceased owned, in addition to some horses, an interest (the exact share or amount no witness appeared to know) in twenty-five hogs and ten cows.    When his brother's family came to live with him none of the land he occupied was in cultivation. One  hundred  acres  were  then  broken  out  by  the nephews and their uncle and farmed for a few seasons, when they all moved to another piece of leased land.    Very little of this was in cultivation at the time of the uncle's death.    Homer McLaughlin testified as follows:

"Ans.  There  was  no  plowing  done.  · There  were about thirty acres tillable land.

"Ques.  After  you  moved  on this  last  place,  how much did you plow of that?    A.  Never plowed any. We listed that.

"Q.  How  much  stock  did  you  have  on  this  last place?    A.  At that time I guess we had—my brother and I had about ten head of horses, and my uncle had about twenty head.

"Q.  And how much other stock?    A.  Had ten head of cows and about twenty-five head of hogs.

"Q.  Who had these cows; to whom did they belong? A.  To my sister and my mother and we boys.

"Q.  And you boys?    A.  Yes, sir.

"Q.  What else did you have on the place there?    A. Had hogs.

"Q.  How  many  hogs  did  you  have?    A.  About twenty-five head, I guess.

"Q. Did they belong to you and your mother and your brother? A. And my uncle.

"Q. How many belonged to your uncle? A. I can't say how many. We had them in partnership.

"Q. How much stuff did your uncle have on the place there? A. Of his own stock, you mean?

"Q. I mean of his own stock. A. I can't say. He had about twenty head of horses, and some hogs, and some farming implements."

There was testimony showing that from the time of their father's death the uncle had managed and looked after the affairs of the plaintiffs who went to live with him, and to some extent had given them a father's advice and counsel. The work on the farm was done by the nephews, but the deceased had general charge of matters, leased the land and sold the products, giving to the nephews what money they required. Homer testified that he had received from his uncle as much as $100 in one year. The deceased also made casual gifts of money to some of the other plaintiffs; to one of the married nieces he gave ten dollars at one time, and on other occasions smaller sums. He had given to one of the nieces a horse, and had promised her money for a piano.

*John Madden,* and *W. W. Brown,* for plaintiff in error.

*Houston & Brooks,* for defendants in error; *Francis M. Brady,* of counsel.

The opinion of the court was delivered by

PORTER, J.: Numerous errors are complained of, but we shall consider only the claim that the damages allowed are excessive. The deceased was by occupation a farmer, interested as a partner with his nephews and their mother in the ownership of twenty-five hogs and ten head of cows, and in the operations of a farm, which was leased land. The farming was very limited, only thirty acres of the place being tillable. In addition, he had twenty head of horses of his

own and some farming implements. He owned no land, and possessed no other property of any kind. There is nothing in the evidence showing the kind, quality or value of the live stock in which he was interested, or the amount of sales of stock or produce, or the amount of earnings from his personal exertions in his business or occupation. One witness testified that the earnings of deceased from his business or occupation amounted to from $1500 to $2000 a year; but this was a mere conclusion of the witness, which is disputed by the testimony in reference to the slight farming operations carried on, and the small possessions which the deceased had accumulated.

Where income is taken as a test or standard of the measure of damages, in a case of this kind, the income considered must be that which was derived from the personal exertions of the deceased in his business or occupation, as distinguished from income arising from property owned or investments of capital. (*Railway Co. v. Posten,* 59 Kan. 449, 453, 53 Pac. 465; *Railway Co. v. Scheinkoenig,* 62 Kan. 57, 61 Pac. 414.) The theory of the law is that those who inherit from the deceased acquire his property and investments, and are enabled to secure for themselves the ordinary income therefrom. (*D. & R. G. R. R. Co. v. Spencer,* 25 Colo. 9, 52 Pac. 211; 4 Suth. Dam., 3d ed., § 1267; *Gulf, Col. and S. F. Ry. v. Younger,* 90 Tex. 387, 38 S. W. 1121; *Pym v. G. N. Railway Co.,* 2 B. & S. [Eng. Q. B.] 759.)

The loss which plaintiffs suffered by the death of their uncle was not the loss of something which they were legally entitled to receive; it was the loss of something which it was merely reasonably probable they would receive. It includes the loss by them of any pecuniary benefit which they might reasonably have expected to receive during the lifetime of the deceased by gift, and also the loss of any accumulations which it is probable that he would have added to his estate had he lived his natural life, and which they

probably would have received by inheritance. The recovery is based upon evidence of pecuniary benefits conferred by deceased in his lifetime, the continuance of which might reasonably have been expected, together with evidence showing the probability that deceased would have accumulated property had he lived which would probably have gone by inheritance to plaintiffs. (Tiffany, Death by Wrongful Act, § 158.) The measure of damages, therefore, is what the deceased would probably have accumulated in his business or occupation for the probable period of his life. (*Balt. & Ohio R. R. Co. v. Wightman's Adm'r,* 29 Gratt. [Va.] 431, 26 Am. Rep. 384; *Pym v. G. N. Railway Co.,* 2 B. & S. [Eng. Q. B.] 759; *Railroad Co. v. Barron,* 72 U. S. 90, 18 L. Ed. 591; *McAdory v. Louisville & Nashville Railroad Co.,* 94 Ala. 272, 10 South. 507.) The action is for pecuniary compensation only. (*A. T. & S. F. Rld. Co. v. Weber, Adm'r,* 33 Kan. 543, 6 Pac. 877, 52 Am. Rep. 543; *Railway Co. v. Ryan,* 62 Kan. 682, 64 Pac. 603; *Railway Co. v. Moffatt,* 60 Kan. 113, 55 Pac. 837.) In *Railroad Company v. Sweet,* 60 Ark. 550, 31 S. W. 571, the proper way to estimate the damages was said to be:

"By taking into consideration the age, health, habits, occupation, expectation of life, mental and physical capacity for and disposition to labor, and the probable increase or diminution of that ability with the lapse of time; deceased's earning power, rate of wages, and the care and attention which one of his disposition and character may be expected to give his family—all these are proper elements for the consideration of the jury in determining the value of the life taken. From the amount thus ascertained the personal expenses of the deceased should be deducted, and the balance, reduced to its present value, should be the amount of the verdict. (4 Suth. Dam., 3d ed., § 1268; *Central Railroad v. Rouse,* 77 Ga. 393, 3 S. E. 307; *Balt. & O. R. Co. v. Wightman,* 29 Gratt. [Va.] 431, 26 Am. Rep. 384; Field, Dam. § 632; *Mansfield &c. Co. v. McEnrey,* 91 Pa. St. 185, 36 Am. Rep. 662.)"

To the same effect see *Railway Co. v. Moffatt,* 60

Railway Co. v. McLaughlin.

Kan. 113, 55 Pac. 837, and *K. P. Rly. Co. v. Cutter,* 19 Kan. 83.

Counsel for defendants in error justify the verdict by arguing that the expectancy of deceased was ten and one-half years, and that his gross income would amount to ten and one-half times $1500 to $2000, or from $16,000 to $21,000. The calculation leaves out all consideration of the probable diminution in the ability of the deceased, by reason of advancing age, to earn by personal exertions. In four years deceased would have reached the usual limit of strenuous life. Granting that he had the income which one witness said he had, is it a reasonable presumption that he would have continued to earn as much in his seventy-sixth year? As before stated, the testimony of the witness who placed these earnings at these figures is a mere conclusion, unsupported by any evidence, and contradicted by all the facts and circumstances in the case. It has been held error to refuse to instruct the jury in similar cases to consider the probable diminution by reason of advancing age in the power and ability to accumulate. (4 Suth. Dam., 3d ed., § 1268; *The Central Railroad and Banking Co. v. Roach,* 64 Ga. 635.)

There is one way to determine approximately what the accumulations of the deceased would probably have amounted to for the period of his expectancy, and that is by reference to what he had already accumulated. We know how long he had lived; we know his expectancy; we know what he had accumulated. The unknown quantity can best be determined by proportion. If in a lifetime of sixty-six years he had gathered together and possessed only the amount of property shown by the testimony, upon what theory can it be claimed that in the period of his expectancy and naturally declining powers he would probably have accumulated $7000? It must be apparent that the jury in arriving at this verdict went some distance into the realm of imagination, and were not controlled by

the evidence. It has often been said by the courts that in determining the measure of damages in this class of cases much must, of necessity, be left to the discretion of the jury. No fixed and certain rules for the measurement of such damages can be laid down, but the jury must find a substantial basis in the 'evidence for any allowance they make. They must not guess at it. They must use a reasonable discretion. Damages out of reasonable proportion to the expectation of pecuniary profit to be justly anticipated cannot be upheld. (*A. T. & S. F. Rld. Co. v. Brown, Adm'r*, 26 Kan. 443; *Coal Co. v. Limb*, 47 Kan. 469, 28 Pac. 181; *Walker v. Railway Co.*, 104 Mich. 606, 62 N. W. 1032.) In an action for the benefit of a brother and sister, where the deceased had accumulated nothing, it was held that only nominal damages should be awarded. (*Howard v. Delaware & H. Canal Co.*, 40 Fed. 195, 6 L. R. A. 75.)

It is seriously urged that plaintiffs suffered damages by being deprived of the counsel, advice and fatherly care of their uncle. In cases where the facts warrant a recovery for the loss of a parent's counsel and services it is held that the damages must be limited to such as would be of pecuniary value. (*Demarest v. Little*, 47 N. J. Law, 28; 13 Cyc. 371.) When we consider the ages of these women, from twenty-three to forty, each married, in comfortable circumstances, and living at some distance from the uncle, and the ages of the men, one twenty-one, the other twenty-nine, living with their mother, and the circumstances in which they were at the time of the death of this bachelor uncle, it is obvious that the probability of any of them suffering pecuniary loss by being deprived of the physical care and intellectual and moral training of the deceased is quite far-fetched.

The deceased was sixty-six years old, with but a small amount of property, the net accumulations of almost a lifetime. He was without wife or child, or any person legally dependent upon him. As was said

in *A. T. & S. F. Rld. Co. v. Brown, Adm'r*, 26 Kan. 443, 458, "where one dies without wife or child, with no one legally dependent upon him, and with only remote relatives as his next of kin, there is only a remote probability that his earnings, whatever they may be, would inure to such next of kin."

Taking the view of the testimony most favorable to plaintiffs with reference to his earnings and the casual benefactions he made to them, and conceding that they would have inherited from him whatever accumulations he would have made during the period of his expectancy, if he had lived, we are of the opinion that the amount of the verdict is unwarranted by the evidence and the facts in the case, and that the trial court should have set it aside.

The judgment is reversed, and the cause remanded for a new trial.

All the Justices concurring.