Everard W. MARKS, III, Individually and as duly qualified Provisional Administrator of the Successions of Mary Ann Marks and Everard W. Marks, Jr., and Stephanie Lynn Marks, Michelle Alane Marks and Kyle T. Marks

v.

PAN AMERICAN WORLD AIRWAYS, INC., The Boeing Company, United States Aviation Underwriters, Incorporated and the United States Aircraft Insurance Group.

Everard W. MARKS, III, individually and as duly qualified Provisional Administrator of the Succession of Everard W. Marks, Jr. and Stephanie Lynn Marks, Mivhrllr Alane Marks and Kyle T. Marks

v.

PAN AMERICAN WORLD AIRWAYS, INC., The Boeing Company, United States Aviation Underwriters, Incorporated and the United States Aircraft Insurance Group.

Civ. A. No. 82–5537, 82–5536.

United States District Court, E.D. Louisiana.

April 11, 1984.

On Motion to Vacate May 15, 1984.

William C. Gambel, Gregory F. Gambel, New Orleans, La., for plaintiffs.

Robert E. Kerrigan, Jr., Marc J. Yellin, New Orleans, La., for defendants.

CHARLES SCHWARTZ, Jr., District Judge.

This matter was tried to a jury on the issue of damages due to plaintiffs for the wrongful death of their parents. Plaintiffs are Everard W. Marks, III, individually and as duly qualified administrator of the successions of Mary Ann Marks and Everard W. Marks, Jr., Stephanie Lynn Marks, Michelle Alane Marks and Kyle T. Marks. The decedents, Mr. and Mrs. Marks, died in the crash of Pan American Flight 759 at Kenner, Louisiana, on July 9, 1982. Defendants are Pan American World Airways, Inc., and its insurers. Defendants stipulated to liability, and the matter was tried solely on the issue of damages due plaintiffs as the result of the deaths of their parents.

In the complaint filed in this action, plaintiffs asserted their right to recover loss of estate accumulations and inheritance resulting from the wrongful deaths of Mr. and Mrs. Marks. Prior to trial, defendants moved to dismiss this claim on the grounds that such damages are not recoverable as a matter of law. The Court reserved ruling on the issue and, as a matter of judicial economy, submitted the question of quantum on this element of damages to the jury.[1] Following the trial on the merits, the jury rendered a verdict, awarding to each of the plaintiffs the following amounts:

| | |
|---|---|
| For loss of love, affection and guidance, which includes mental anguish and grief, past and future, resulting from the death of Mr. Marks. | $250,000.00 |
| For loss of love, affection and guidance, which includes mental anguish and grief, past and future, resulting from the death of Mrs. Marks | $250,000.00 |
| For loss of services resulting from the death of Mrs. Marks | $150,000.00 |
| For loss of support resulting from the death of Mr. Marks | $150,000.00 |

In addition, the jury awarded plaintiffs two million dollars for the loss of inheritance resulting from the deaths of their parents. The total award to plaintiffs was $5,200,000.00.

Defendants have moved for a new trial and, alternatively, for judgment notwithstanding verdict (n.o.v.). As grounds for the motion, defendants assert, (1) the verdict was a result of passion, bias and prejudice, (2) the award for loss of inheritance is error as a matter of law, and alternatively, the award is unsupported by credible evidence, (3) the awards for loss of services and support are unsupported by credible evidence, and are beyond the maximum amount which a reasonable jury could award, (4) the awards for loss of love and affection exceed the bounds of any reasonable recovery and are the result of jury passion, bias and prejudice, (5) the instructions given by the Court were improper and resulted in prejudice to defendants in that they emphasized the loss of inheritance claim, and (6) the jury interrogatory form was improper and prejudicial. Having considered the memoranda, the record and the law applicable to this motion, the Court denies defendants' motion for new trial. However, the Court grants a judgment n.o.v. on the award for loss of inheritance and, further, grants a remittitur on the jury's awards for loss of services and support.

---

1. See, *Foster v. Maldonado,* 433 F.2d 348 (3rd Cir.1970).

■ We first address defendants' contention that they are entitled to a new trial. Defendants' arguments in this regard are primarily concerned with the admission of evidence on the issue of loss of inheritance. To a certain extent those arguments are mooted by our decision on the issue as set forth below. To the extent that we are required to address them, we are of the opinion that the admission of evidence on the loss of inheritance issue was proper, since that evidence would have been admissible, in any event, as relevant to the loss of support claim. We do not agree with defendants' contention that all of the awards were so "tainted by the inheritance issue" that a new trial is warranted.

■ Defendants also contend that the jury interrogatory form was prejudicial in that there should have been one "blank" for each element of damages recoverable, rather than a blank for each plaintiff under each element. The Court responds that there were four plaintiffs in this case, each of whom testified, and each was entitled to a separate determination of their respective claims.

■ With regard to defendants' contention that the awards for loss and affection were the result of jury passion, bias and prejudice, we are of the opinion that the award is within the bounds of reasonable recovery. See, e.g., *Caldarera v. Eastern Airlines, Inc.*, 705 F.2d 778 (5th Cir.1983). As such, we may not substitute our judg-ment for that of the jury. *Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir.1969).

We now turn to the loss of inheritance issue.

The Louisiana wrongful death and survival statute, L.S.A.–C.C. art. 2315, provides in pertinent part:

"Every act whatever of man that causes damage to another obligates him by whose fault it happened to repair it..."

"The survivors in whose favor this right of action survives may also recover the damages which they sustained through the wrongful death of the deceased..."

Although no Louisiana court has specifically held that loss of inheritance is a recoverable item of damage under article 2315, plaintiffs assert that article 2315 is a "Lord Campbell" wrongful death act, and an award of such damages is routinely allowed in other jurisdictions applying statutes which have their origin in the common law and the Lord Campbell Act of 1846.[2] Plaintiffs also refer to the various federal statutes which have held such loss to be an element of recovery.[3] During the trial of this matter, plaintiffs placed particular significance upon the methodology utilized by the Pennsylvania courts in allowing the recovery of damages for loss of estate accumulations and inheritance. The Pennsylvania standard jury instruction on this element of damage indicates that, generally,

**2.** Plaintiffs cite the following authorities: *Denver & R.G.R. Co. v. Spencer*, 1900, 27 Colo. 313, 61 P. 606, 51 L.R.A. 121; *Short v. Philadelphia B & W R. Co.*, 1908, 23 Del. 108, 76 A. 363; *United States v. Compania Cubana De Aviacion, S.A.*, C.A. 5, 1955, 224 F.2d 811; *Dina v. Seaboard Air Line R. Co.*, 1925, 90 Fla. 558, 106 So. 416; *Denton v. Midwest Dairy Products Corp.*, 1936, 284 Ill.App. 279, 1 N.E.2d 807; *Scott Hinman*, 1933, 216 Iowa 1126, 249 N.W. 249; *Kemp v. Creston Transfer*, D.C.Iowa, 1947, 70 F.Supp. 521; *Missouri K & T R. Co. v. McLaughlin*, 1906, 73 Kan. 248, 84 P. 989; *Bagley v. St. Louis*, 1916, 268 Mo. 259, 186 S.W. 966; cf. *Adams v. Severance*, 1945, 93 N.H. 289, 41 A.2d 233; *Nordlund v. Lewis & Clark R. Co.*, 1932, 141 Or. 83, 15 P.2d 980; *International-Great Northern R. Co. v. Acker*, 1939, Tex.Civ.App., 128 S.W.2d 506; *Parmley v. Pleasant Valley Coal Co.*, 1924, 64 Utah 125, 228 P. 557; *Spiking v. Consolidated*

*Ry. & Power Co.*, 1908, 33 Utah 313, 93 P. 838; *Tidmarsh v. Chicago, M. & St. P. Ry. Co.*, 1912, 149 Wis. 590, 136 N.W. 337.

**3.** See, *National Airlines v. Stiles*, 268 F.2d 400 (5th Cir.1959), holding loss of inheritance to be recoverable under the Death on the High Seas Act, 46 U.S.C. § 761 et seq.; *Martin v. Atlantic Coast Line R. Co.*, 268 F.2d 397 (5th Cir.1967), in which the court reached the same conclusion in interpreting the Federal Employers' Liability Act, 45 U.S.C. § 51 et seq.; *Daughdrill v. Diamond M Drilling Co.*, 305 F.Supp. 836 (D.C.La. 1969), allowing recovery of damages for loss of inheritance in a Jones Act case; *United States v. Compania Cubana de Aviacion S.A.*, 224 F.2d 811 (5th Cir.1955), allowing such damages in a claim arising under the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq.

in a wrongful death/survival action, plaintiff is entitled to recover the net amount that the decedent would have earned until the end of his life expectancy. Net earnings, under this method, are calculated by determining the amount of decedent's gross earnings until the end of his life expectancy and deducting the probable cost of his necessary and economical living expenses required to sustain life, together with the amount of monetary contributions decedent would have made to his family during this period. Under Pennsylvania law, the award to the estate, thus, represents the total net earnings over the decedent's work life expectancy.[4]

Defendants maintain that damages for loss of estate accumulations and inheritance are not recoverable since there is no authority for such recovery under Louisiana law. Indeed, our review of the pertinent jurisprudence reveals a dearth of recent precedent to indicate how the Louisiana Supreme Court would resolve the issue if it was presently before the Court. There are no Louisiana cases of which we are aware in which such an award was affirmed. However, this is not to say that the Louisiana courts have not had occasion to address such a claim. In an early case, *Eichorn v. New Orleans & C.R. Light & Power Co.*, 114 La. 712, 38 So. 526 (1904), plaintiff brought an action both individually and on behalf of her minor children for the wrongful death of her husband, and was awarded $20,000.00 by a jury. Plaintiffs appealed, asserting that the verdict did not reflect the loss to them of the amount which decedent would have earned during his lifetime. In affirming the award, the Louisiana Supreme Court discussed the evidence, or lack thereof, concerning earnings which decedent would have accumulated during his lifetime. However, the Court concluded, as a matter of law, that plaintiffs were not entitled to such an award, stating:

"... the object of this law [Louisiana's wrongful death statute] (so far as the

children are concerned) was to save them harmless during their minority from the loss of the benefits (material and moral) which they would have received had their father lived up to the time of their respective majorities to provide for their temporary needs—to tide them over to majority under as favorable conditions as they would have been tided over had their father not been killed. *We do not think that the amount of property which the father might have possibly earned up to the date of his probable natural death, and which these children might have inherited at that time, enters as a factor in determining to what extent they are entitled to a judgment in their favor.* The true question is, what had the children the right to receive from their father during their minority? For the loss of this they are to be compensated. What they were to get after his death would not enter into the case." 38 So. at 530. [emphasis supplied.]

Furthermore, the Court noted that, in any event, the evidence did not warrant a conclusion that decedent "would have increased his patrimony had he lived." 38 So. at 531.

In a subsequent case, *Dowell, Inc. v. Jowers*, 166 F.2d 214 (5th Cir.1948), cert. denied, 334 U.S. 832, 68 S.Ct. 1346, 92 L.Ed. 1759, the Fifth Circuit reversed the trial court on the grounds, *inter alia*, that the court's instruction on damages was both deficient and prejudicial. The Court quoted extensively from *Eichorn*, and indicated, without so holding, that loss of inheritance is not a recoverable item of damages under Louisiana's wrongful death statute, stating:

"Under Louisiana law, in the case of a widow an element of damages is loss of support during her deceased husband's life expectancy; *in the case of minor children, it is an element only during their minority* ... Such elements as

---

**4.** See, e.g., *Incollingo v. Ewing,* 444 Pa. 263, 282 A.2d 206 (1971); *Murray v. Philadelphia Trans. Co.,* 359 Pa. 69, 58 A.2d 323 (1948); and *Kac-*

zkowski v. Bolubasz, 491 Pa. 561, 421 A.2d 1027 (1980), holding that there shall be no discount to present value of future loss of earnings.

these should have been dealt with in the charge to the jury. In addition, it should have been explained that the amount of wages earned by [decedent] at the time of his death may be considered by the jury along with other evidence in arriving at the degree of support he would have given to his family. *The charge as given on this point is an invitation to the jury to figure on the basis of [decedent's] life expectancy how much he would have earned during his lifetime, and subtract the amount it would have cost for his own sustenance; the sum thus arrived at would represent what plaintiffs would have received from him. The law does not permit damages to be so calculated in cases like the one before us."* 166 F.2d at 220. [emphasis supplied.]

However, more recently, Louisiana courts have indicated, without so holding, that recovery for loss of inheritance *might* be allowed upon presentation of proper proof of the claim. For example, in the case of *Pennington v. Justiss-Mears Oil Company,* 123 So.2d 625 (La.App. 1st Cir. 1961), affirmed as amended, 242 La. 1, 134 So.2d 53 (1961),[5] plaintiffs, a widow and her minor children, appealed the trial court's denial of recovery for loss of reasonably anticipated inheritance to herself and her minor children. The appellate court affirmed on the grounds that such an award was too speculative under the circumstances of the case. We reproduce the pertinent portions of that opinion:

"Insofar as the children's claim for loss of inheritance is concerned, under all the circumstances of this case, we do not find that the trial court erred in failing to make such an additional award. They did in fact receive a substantial inheritance from their father, but composed in substantial part of depletable oil properties. While it is not speculative to assume that they and their mother would have continued to receive a substantial amount of support as a result of their father's high income from his oil activi-

ties, it can be considered speculative to assume that the decedent's acquisitions of oil properties would have produced an accretion to his estate at a rate substantially in excess of the living expenses of this high-income family and of the rate of depletion of his other oil properties, so that a disallowance by the trial court of recovery by the children for such alleged loss of inheritance was not erroneous, nor an abuse of its discretion.

For the reasons above-stated, we do not find it necessary to pass upon the contention of the appellants that a recovery for loss of inheritance is not allowable under the law of Louisiana, nor (for that matter) upon the contention of the appellee that such damages are properly allowable." 123 So.2d at 636.

It is interesting to note that the Court so held, although, in determining the propriety of the loss of support award, it

"[took] into consideration ... the life expectancies of the spouses, the decedent's high cash income as a successful oil man over their marital life and the likelihood that such would continue and even increase, their very happy marriage bound by the ties of three children ... the constantly decreasing purchasing power of the dollar over the years, the circumstance that the decedent was the only son of a wealthy and successful oil producer and associated with him in various enterprises..." 123 So.2d at 635.

This would seem to indicate that while the Louisiana courts will allow recovery for loss of support upon proof of such facts as those quoted above, nonetheless, these factors are not sufficient to take damages for loss of inheritance out of the realm of damages which are too speculative to be allowed. See also, *Parker v. Smith,* 147 So.2d 414, 415 (La.App. 1st Cir.1962), in which the Court affirmed the trial court's denial of recovery for loss of inheritance as unsupported by the evidence.

■ We are *Erie*–bound to recognize that the *Eichorn* case, although it may be dated, is the only Louisiana precedent to

---

**5.** The amendment of the judgment related solely

to the amount of the award for loss of support.

squarely address the issue of whether inheritance is a recoverable item of damage under the Louisiana wrongful death statute, and that case held that such damages were not recoverable. We are not of the opinion that we may adopt the interpretations of the Lord Campbell[6] wrongful death act jurisdictions, *sub judice*, nor should we so adopt the methodology for proving such a claim. However, our conclusion in this regard is academic, since we find that under the circumstances of the instant case, such damages are too speculative and are not supported by a preponderance of the evidence, as is explained below.

The decedent, Mr. Marks, was engaged in the business of purchasing and selling/leasing oil and gas properties.[7] Specifically, he assembled investment packages for transactions relative to such properties.[8] Several witnesses testified concerning Mr. Marks' ability, business acumen and entreprenurial skills in the area of oil patch investments.[9] At his death, the gross community estate of Mr. and Mrs. Marks was valued at $3,538,034.00 with approximately $1.5 million attributable to interests in various oil and gas properties.[10]

Plaintiffs' expert economist, Dr. Frederick Raffa, testified concerning the claim for loss of estate accumulations and inheritance. Dr. Raffa testified that he reviewed Mr. Marks' tax returns to calculate a base annual after-tax earnings figure, exclusive of dividends, interest, rental income and the like. He then applied a growth rate factor, resulting in his estimation of decedent's pre-retirement lifetime earnings, and added an additional estimate of retirement income from the proceeds of the net estate accumulations. From the resultant figure, Dr. Raffa deducted an estimate, based upon data from the United States Department of Labor, of the percentage of income which would have been consumed by Mr. and Mrs. Marks during their lifetimes for maintenance, such as food, clothing, shelter and other needs. He also deducted his estimate of the amount which would have been expended by Mr. Marks for further support of the children. Dr. Raffa arrived at a figure which he termed decedents' "unadjusted loss of net accumulation." He adjusted that figure by a factor based upon the Consumer Price Index to determine the "adjusted value of the estate." Finally, Dr. Raffa discounted this amount to present value, utilizing a factor of 8%, and concluded that the loss of estate accumulations/inheritance of plaintiffs was $1,346,288.00 relative to Mr. Marks' estate, and $858,137.00 relative to Mrs. Marks' estate.

■ We find that Dr. Raffa's testimony in this regard was wholly speculative and unsupported by facts in evidence. For an expert's testimony to bear any weight, it must be supported by proven facts. See, e.g., *Construction Aggregate Transport, Inc. v. Florida Rock Industries, Inc.*, 710 F.2d 752 (11th Cir.1983). The amount of earnings reflected in decedent's tax returns, primarily those for the three to four years prior to Mr. Marks' death, was the sole evidence relating specifically to the decedents which Dr. Raffa utilized in formulating his expert opinion.[11] There was no evidence presented at trial concerning the saving and spending habits of the decedents. There was no evidence concerning whether decedents had any predisposed plan of saving during their lifetimes to indicate they planned an estate for their children. In fact, the only evidence in this regard indicated that decedents intended to

---

6. We do not address whether Louisiana's wrongful death act does in fact have its origins in the Lord Campbell Act.

7. Testimony of David Bennett.

8. Testimony of Leon Fournet.

9. Testimony of David Bennett, Richard Pfister, Leon Fournet and William Huls.

10. Record of Successions of decedents; testimony of David Bennet.

11. We are cognizant of Dr. Raffa's use of statistical data. Furthermore, it is also possible that Dr. Raffa took into consideration the testimony of the various witnesses concerning Mr. Marks' business ability to conclude that decedent had the ability to continue earning income as he had in the past.

provide for their children during their lifetimes, i.e., the establishment by Mr. Marks of the "Zachary Trust" in which each child had an interest.

Dr. Raffa's testimony presupposed that Mr. Marks would have continued to earn the substantial income reflected in the income tax returns for the few years prior to his death. Yet, there was no evidence that Mr. Marks intended to remain in his occupation for the remainder of his work life expectancy. There was no evidence concerning Mr. Marks' intentions with regard to the oil and gas properties which comprise a substantial portion of his present estate.[12]

Dr. Raffa was the sole witness whose testimony was introduced to support plaintiffs' claim for loss of inheritance.[13] We find that his testimony was based upon rank speculation and was not supported by the facts of this case. Although the Louisiana courts have never allowed an award for loss of inheritance and, thus, have never delineated the manner in which such a claim may be proven, the methodology utilized by Dr. Raffa is similar to that which was specifically not permitted by the Fifth Circuit in a wrongful death case. *Dowell, Inc. v. Jowers, supra.* In view of the evidence, or lack thereof, in this case, concerning the loss of inheritance claim, the comments of Dr. Stuart Wood,[14] defendants' expert economist, are worth noting:

"Without a detailed knowledge of the saving and spending habits of the deceased, it is impossible even to speculate on what they might have done. The children may have suffered an economic loss due to the untimely death, but ... [i]t is more likely that an economic gain has occurred than that an economic loss has occurred because all of the assets whose incomes would have contributed to the parents' investments and savings have already been inherited intact by the children."

Cf: *Pennington v. Justiss-Mears Oil Company,* supra.

■ A directed verdict or judgment n.o.v. may be granted when the evidence points so strongly and overwhelmingly in favor of the moving party that the court believes reasonable persons could not arrive at a contrary verdict. *Dalton v. Toyota Motor Sales, Inc.,* 703 F.2d 137 (5th Cir.1983). We are mindful that "it is the function of the jury as the traditional finder of facts, and not the Court, to weigh conflicting evidence and inferences, ..." *Boeing Co. v. Shipman,* supra, at 375. However, we find that under the circumstances of this case, the evidence clearly does not support an award for loss of inheritance, and reasonable minds could not differ as to this conclusion. *Dowell, Inc. v. Jowers, supra; Pennington v. Justiss-Mears Oil Company, supra; Parker v. Smith, supra.*

■ Finally, defendants maintain that the awards for loss of services and support are unsupported by credible evidence, and are beyond the maximum amount which a reasonable jury could award. We agree. Plaintiffs' expert economist testified that the total loss of support to them was, in his opinion, $178,536.00, and the total loss of services was $218,724.00. We find that these figures represent the total awards which are supported by the evidence, and further, represent the maximum that a jury could reasonably have awarded.

Accordingly, it is ordered that the motion of defendants for judgment notwithstanding the verdict is granted solely as to the jury's award of $2 million for loss of inheritance. It is further ordered that the motion of defendants for a new trial is denied; said denial is conditioned upon the accept-

---

12. The only testimony in this regard was Mr. Bennet's response that he did not know what Mr. Marks intended to do with these properties.

13. Again, we are cognizant of the extensive testimony concerning Mr. Marks' ability and earning capacity. See, fns. 8 and 10.

14. Dr. Wood's report was admitted into evidence and the parties stipulated that his testimony would have been in accordance therewith.

ance by the plaintiff of a remittitur of the judgment, as follows:

1. Loss of support resulting from the death of Mr. Marks .................... $178,536.00

2. Loss of services resulting from the death of Mrs. Marks .................... $218,724.00 [15]

Plaintiffs are instructed to file appropriate pleadings into the record of this matter indicating their desire to accept or reject such remittitur no later than ten (10) days from this date, in order that the Court, in the event that plaintiff refuses the remittitur, can proceed with setting this matter for a retrial as to the claims for which a remittitur has been granted.

## ORDER AND REASONS

### On Motion To Vacate

This matter came before the Court on the motion of plaintiffs to vacate the Court's order of April 11, 1984, granting remittitur on the jury awards for loss of support and loss of services. The parties waived oral argument and submitted the motion on memoranda. Considering the memoranda, the record and the law applicable to this motion, the Court denies the motion; however, the Court amends its Order of April 11, 1984 in the following respects and for reasons set forth below.

Plaintiffs' expert economist, Dr. Frederick Raffa, testified at trial that the total loss of support to plaintiffs was, in his opinion, $397,260.00. This figure included the sum of $218,724.00 for maintenance of the household, and $178,536.00 for tuition and living expenses to plaintiffs until the time they were expected to complete their college educations. Dr. Raffa's opinion with regard to living expenses was based upon the presumption that each of the plaintiffs would have received an allowance of $450.00 per month for living expenses. However, other witnesses testified that three of the plaintiffs had actually been receiving amounts greater than $450.00 for living expenses.[1] Based upon that testimony, the jury could reasonably have found that plaintiffs were entitled to an award for loss of support in an amount greater than that calculated by Dr. Raffa.

Based upon the evidence, we find that the maximum amount which the jury could have awarded plaintiffs for loss of support is as follows:[2]

| | |
|---|---|
| Everard Marks .................. | $95,299.00 |
| Stephanie Marks ............... | $107,784.00 |
| Michelle Marks ................. | $100,591.00 |
| Kyle Marks .................... | $121,984.00 |

With regard to loss of services of the decedents, defendants contend that there is no evidence to support any such award. We disagree. While damages may not be speculative, the Court should not hesitate to use its equitable powers to draft the most accurate estimate possible where a party reasonably establishes a loss. *Aus-*

---

**15.** In remitting the loss of support and loss of services awards to a single sum to plaintiffs, we adhere to the jury's determination that each of the plaintiffs is entitled to the same amount as to these claims.

**1.** See testimony of each of the plaintiffs and testimony of David Bennett, indicating that plaintiffs, Stephanie Marks, Michelle Marks and Kyle Marks were receiving living expenses in the amount of $1400.00, $1000.00 and $850.00, respectively.

**2.** These figures are based upon the evidence adduced at trial, and were calculated in the following manner. Each award includes a pro rata share, specifically, $54,681.00, of the expense of maintaining the household during the period of support, according to Dr. Raffa's testimony. In addition, each award includes the amount which Dr. Raffa testified would be required for tuition and living expenses, plus a sum representing the difference between the amount of living expenses received (see fn. 1) and the $450.00 per month utilized by Dr. Raffa in calculating living expenses as an item under loss of support. The additional award for living expenses was discounted at 8% to the date of judicial demand, since Dr. Raffa testified that this was the appropriate discount rate. We note that no such adjustment of Dr. Raffa's calculation of the loss to Everard Marks was necessary since those calculations were based upon the actual amount which, according to the testimony, this plaintiff was receiving and were not increased. (See Appendix A for specific computations.)

*tin v. Parker*, 672 F.2d 508 (5th Cir.1982). We are mindful that a jury verdict should not be disturbed unless it is entirely disproportionate to the injury sustained. *Caldarera v. Eastern Airlines, Inc.*, 705 F.2d 778 (5th Cir.1983). In the instant case, the award of $150,000.00 to each of the plaintiffs for loss of services of the decedents does exceed the bounds of any reasonable recovery, and as such, the Court must suggest a remittitur.

We find that the maximum value which could reasonably be placed upon Mrs. Marks' services, as described by the trial testimony, is $200.00 per week. Furthermore, the maximum proportion of the services which could reasonably be expected to have been for the benefit of plaintiffs is one-half.[3] The loss of services of Mrs. Marks should be distributed among plaintiffs on the basis of the period during which they would have benefited from those services, specifically, until each of them is expected to graduate from college.

Based upon the foregoing, we find that the maximum amount supported by the evidence which the jury could reasonably have awarded for the loss of services of Mrs. Marks is as follows:[4]

| | |
|---|---|
| Everard Marks | $2,263.00 |
| Stephanie Marks | $3,868.00 |
| Michelle Marks | $6,275.00 |
| Kyle Marks | $15,547.00 |

Plaintiffs contend that an award for the loss of the services of Mr. Marks is also proper based upon evidence of the nurture, guidance and the like which he provided to plaintiffs. However, nurture and guidance are elements to be considered in an award for loss of love and affection, an award which was given by the jury in its verdict. Loss of services is another element of recoverable damage. *Marceleno v. State Highway*, 367 So.2d 882 (La.App. 2d Cir. 1979). There was no evidence at trial to

support an award for loss of services of Mr. Marks, and thus, an award on this element would not have been proper.

Accordingly, it is ordered that the Court's Order of April 11, 1984 be and it is hereby amended solely with regard to the nature and amount of the remittitur of the jury's awards for loss of services and loss of support, as follows:

1. Loss of support:

| | |
|---|---|
| Everard Marks | $95,299.00 |
| Stephanie Marks | $107,784.00 |
| Michelle Marks | $100,591.00 |
| Kyle Marks | $121,984.00 |

2. Loss of services:

| | |
|---|---|
| Everard Marks | $2,263.00 |
| Stephanie Marks | $3,868.00 |
| Michelle Marks | $6,275.00 |
| Kyle Marks | $15,547.00 |

Plaintiffs are instructed to file appropriate pleadings into the record of this matter indicating their desire to accept or reject such remittitur no later than ten (10) days from this date, in order that the Court, in the event plaintiffs refuse the remittitur, can proceed with setting this matter for a retrial as to the claims for which a remittitur has been granted.

In entering the judgment herein, the Clerk of Court is directed to award interest at the legal rate of 12% on all sums from the date of judicial demand.

### APPENDIX A

EVERARD MARKS:

| | |
|---|---|
| $40,618.00 | Raffa's computed loss of living expenses and tuition |
| +54,681.00 | Pro rata share of household expenses |
| $95,299.00 | Total loss of support |

STEPHANIE MARKS:

| | |
|---|---|
| $1400.00 | Monthly living expenses |
| − 450.00 | Utilized by Raffa as monthly living expenses |
| $ 950.00 | |
| $ 950.00 | |
| × 05 | Months of loss of support prior to judicial demand |
| $ 4,750.00 | |

---

3. One-half of the value of the services would reasonably be expected to have been for the benefit of Mr. and Mrs. Marks.

4. As in the awards for loss of support, the awards for loss of services are based upon a

computation of the foregoing with an application of a discount factor of 8% to the date of judicial demand. (See Appendix B for specific computations.)

$ 950.00
× 29 Months of loss of support subsequent to judicial demand
$27,550.00 = $24,560.00 when discounted at 8%.

$ 54,681.00 Pro rata share of household expenses

23,793.00 Raffa's computed loss of living expenses and tuition

29,310.00 Additional loss of support
$107,784.00 Total loss of support

## MICHELLE MARKS:

$1,000.00 Monthly living expenses
− 450.00 Utilized by Raffa as monthly living expenses
$ 550.00
$ 550.00
× 05 Months of loss of support prior to judicial demand
$ 2,750.00
$ 550.00
× 41 Months of loss of support subsequent to judicial demand
$22,550.00 = $19,367.00 when discounted at 8%.

$ 54,681.00 Pro rata share of household expenses

23,793.00 Raffa's computed loss of living expenses and tuition

22,117.00 Additional loss of support
$100,591.00 Total loss of support

## KYLE MARKS:

$850.00 Monthly living expenses
450.00 Utilized by Raffa as monthly living expenses
$400.00
$ 400.00
× 05 Months of loss of support prior to judicial demand
$2000.00
$ 400.00
× 65 Months of loss of support subsequent to judicial demand
$26,000.00 = $20,760.00 when discounted at 8%.

$ 54,681.00 Pro rata share of household expenses

44,543.00 Raffa's computed loss of living expenses and tuition

22,760.00 Additional loss of support
$121,984.00 Total loss of support

## APPENDIX B

July 1982 to December 1982 = 22 weeks
$$\frac{\times 100}{2200}$$ weekly value of services
$$\frac{4}{550}$$ number of children benefiting per child

December 1982 to May 1984 = 74 weeks
$$\frac{\times 100}{7400}$$ weekly value of services
$$\frac{4}{1850}$$ = 1713 when discounted at 8%.

May 1984 to May 1985 = 52 weeks
$$\frac{\times 100}{5200}$$
$$\frac{3}{1733}$$ = 1605 when discounted at 8%.

May 1985 to May 1986 = 52 weeks
$$\frac{\times 100}{5200}$$
$$\frac{2}{2600}$$ = 2407 when discounted at 8%.

May 1986 to May 1988 = 104 weeks
$$\frac{\times 100}{10,400}$$ = 9,272 when discounted at 8%

Everard Marks..........................$550 + $1713 = $2,263.00
Stephanie Marks.......................$2263 + $1605 = $3,868.00
Michelle Marks ........................$3868 + $2407 = $6,275.00
Kyle Marks.............................$6275 + $9272 = $15,547.00