**SCHWEGMANN GIANT SUPERMAR-KETS d/b/a Caillouet Farms**

v.

**GOLDEN EAGLE INSURANCE COMPANY.**

Civ. A. No. 88–0008.

United States District Court, E.D. Louisiana.

Oct. 21, 1988.

Stone, Pigman, Walther, Wittmann & Hutchinson, Randall A. Smith, Scott T. Whittaker, New Orleans, La., for plaintiff.

Middleberg, Riddle & Gianna, Dominic J. Gianna, Alan Dean Weinberger, Trial Atty., Metairie, La., for Golden Eagle Ins. Co.

## ORDER AND REASONS

CHARLES SCHWARTZ, Jr., District Judge.

This matter came before the Court on October 12, 1988, for hearing defendant Golden Eagle Insurance Company's motion for judgment notwithstanding the verdict or in the alternative for a new trial. Having considered the record, the arguments of counsel, and the applicable law, the Court now DENIES the motion.

### I.

Defendant seeks relief from the judgment entered by this Court in this matter on August 25, 1988, awarding the plaintiff $165,000 plus interest from the date of judgment. 693 F.Supp. 478. Defendant seeks relief on two separate grounds: (1) that this Court erred in determining as a matter of law the defendant was liable under its policy of insurance with the plaintiff to pay the actual value of the horse, NOTARY, at the time of his death on November 12, 1986; and (2) that the jury verdict awarding the plaintiff $240,000 in damages for the actual value of the horse, NOTARY, at the time of his death (less stipulated set-off of $75,000 for payment previously made) was excessive and unreasonable.

Specifically, defendant claims plaintiff made a material misrepresentation which voided the insurance policy under Mississippi law when plaintiff represented to be "the sole and unconditional owner of the horse", because Allen Faulkner had retained an interest. Defendant cites three provisions of the January 15, 1985 agreement between Caillouet Farms and Allen Faulkner transferring the remaining one-half interest in the horse which he claims support this conclusion: [1]

(1) the AQHA Registration papers were to be withheld until full payment of the price;

(2) the plaintiff was supposed to insure the unpaid balance of the price, with a loss payable clause to Allen Faulkner; and

(3) if the horse was sold prior to final payment, the balance would be due immediately.

Defendant's argument follows two rationales: first, that retention by Allen Faulkner of the AQHA Registration papers created an ownership interest in the horse; second, that through the three above enumerated acts, Allen Faulkner had retained a security or other non-equity interest in the horse, which interest should have been disclosed. The language of paragraph 2(b) of the insurance policy provides as follows:

---

1. See plaintiff's exhibit P–3.

You as the insured expressly warrant and represent that on the effective date of this policy:

> B.  that you are the sole and unconditional owner of the HORSE and no other partner, partners, part owner, part owners, person or persons, or entity have any interest therein unless expressly endorsed on this policy.

As previously set forth by this Court in its Order and Reasons in this matter, the question of title to the horse is governed by the Mississippi version of Article 2 of the Uniform Commercial Code, *Miss. Code Ann.* Title 75, Chapter 2 (1972).

### II.

■ With respect to defendant's claim that retention of title by Allen Faulkner amounted to an ownership interest, the evidence demonstrated that ownership of the horse had passed completely upon the execution of the January 15 agreement between plaintiff and Allen Faulkner. The withheld AQHA Registration Certificate was not a document of title conferring ownership. Possession of the Certificate merely allowed the holder to show the horse and register its foals. It is undisputed that subsequent to the agreement plaintiff had unfettered discretion to exercise its powers of ownership over the horse in any manner it wished, such as caring, training, breeding and even including the alienation of the horse, if so desired. Since the AQHA Certificate was not a document of title and Caillouet Farms already had possession of the horse, U.C.C. § 2–401(3)(b) would govern, and therefore title passed at the time of the agreement.[2]

### III.

■ The second rationale relied upon by defendant is that through the terms of the January 15 agreement, Allen Faulkner retained a security or other non-equity interest in the horse, and the failure to disclose this interest was a material misrepresentation which voided the policy. This argument necessarily involves an interpretation of the policy terms regarding those interests which must be disclosed. As noted previously, paragraph 2(b) of the policy refers to "any interests." Defendant claims a security interest was created and had attached under Article 9 of Mississippi's version of the U.C.C., even though the requirements for perfection under that Article were not met. The distinction here is immaterial, because this Court concludes no security interest, nor any other type of interest, was created between the parties to the agreement.

U.C.C. § 9–203 sets forth, in pertinent part, the following requirements for the creation of a security interest:

> "(1) ... [A] security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless
>
> > (a) ... the debtor has signed a security agreement which contains a description of the collateral, and ...
> >
> > (b) value has been given; and
> >
> > (c) the debtor has rights in the collateral."

The language of the January 15 agreement does not on its face provide for the creation of a security interest, therefore, the Court must examine the intent of the parties. U.C.C. § 9–102(1)(a). Plaintiff argues the terms of the agreement do not evidence an intention by the parties to actually encumber the horse, but only to encourage full payment of the price, and this Court agrees. The agreement of January 15 was a credit sale upon execution of which full ownership of the horse passed immediately to the buyer. Plaintiff, as previously noted, obtained the unquestioned right to exercise full powers of ownership over the horse thereafter. It is uncontested that as

---

**2.** That article provides in pertinent part as follows:

> (3) Unless otherwise explicitly agreed where delivery is to be made without moving the goods,

> > (a) If the seller is to deliver a document of title, title passes at the time when and the place where he delivers such documents; or
> >
> > (b) If the goods are at the time of contracting already identified and no documents are to be delivered, title passes at the time and place of contracting.

seller, Faulkner's only remedies against plaintiff as buyer for possible breach of their agreement would have been under U.C.C. §§ 2–703 and 2–709, involving an action for recovery of the price. Therefore, "Mr. Faulkner would have become a general, unsecured creditor, without the right to take back the horse if plaintiff could satisfy his debt otherwise." [3]

## IV.

■ Furthermore, the language of paragraph 2(b) of the policy is in itself ambiguous. This provision, *supra*, requires the disclosure of "any interests." Defendant would interpret this language broadly so as to require that all interests, including non-equity as well as equity interests be disclosed. However, plaintiff has called to our attention two significant ambiguities. First, it contends the language of that paragraph read as a whole is susceptible to an interpretation which only requires disclosure of ownership or equity interests, since all the parties specifically listed in that paragraph may be characterized as equity holders. More significantly, paragraph 20 of the policy, on Concealment or Misrepresentation, specifically refers to paragraph 2(b) and speaks only to ownership and physical condition of the horse, and not of "any interest" therein.[4] It would have been an easy matter for defendant to insert the words "or any other interests in" after the words "ownership of" in Paragraph 20. "A condition tending to defeat a policy must be expressed or so clearly implied that it cannot be misconstrued." *The Home Insurance Company v. Thunderbird, Inc.*, 338 So.2d 391 (Miss. 1976), quoting 1 Couch on Insurance 2d § 15:92 at 938 (1959). The most this Court can say about the policy provisions in question is that they are highly ambiguous. The applicable rule is "ambiguities in an insurance contract are to be strongly construed against the insurer." *Sanford v. Federated Guaranty Insurance Co.*, 522 So.2d 214, 217 (Miss.1988), citing *National Life and Accident Co. v. Miller*, 484 So.2d 329, 337 (Miss.1985).

## V.

■ The Court disagrees with defendant's claim that it is entitled to a new trial because the jury's award of damages was "grossly excessive and unreasonable and against the weight of the evidence." The jury had the opportunity to weigh the testimony of the experts, and there were no pernicious or undesirable occurrences at trial which could have influenced the jury's calculation of the value of the horse.[5] No objections were made to opening or closing arguments or to the instructions given to the jury. If the jurors believed plaintiff's experts and gave full weight and credit to their testimony, their verdict was amply supported by the evidence. Thus, even if this Court believed it would have rendered a verdict for a different amount, it is not the basis for upsetting the jury's verdict for excessiveness when, as here, the jury's verdict is supported by the weight of the evidence. *Marks v. Pan American World Airways, Inc.*, 591 F.Supp. 827, 829 (E.D. La.1984), *aff'd*, 785 F.2d 539 (5th Cir.1983); *Eyre v. McDonough Power Equipment, Inc.*, 755 F.2d 416, 420 (5th Cir.1985).

## VI.

For the foregoing reasons, motion of defendant for judgment notwithstanding the verdict or in the alternative for a new trial is hereby DENIED.

---

**3.** Order and Reasons, August 25, 1988, doc. 36 at 14.

**4.** 20. Concealment or Misrepresentation.
This policy is void if you have concealed or misrepresented any material fact or circumstance relating to this policy. For purposes of this provision, representations relative to the physical condition of the HORSE and ownership of the HORSE set forth in Paragraph 2 are deemed representations of material facts. If you make any claim under the policy knowing the same to be false as regards amount of loss, ownership of the HORSE or otherwise, this policy shall be void and any claim thereunder shall be forfeited.

**5.** Moreover, the evidence demonstrated that defendant had ample time to investigate the horse and determine its true value before issuing the policy.